# JEMISON ET AL. *vs.* GOVERNOR OF ALABAMA.

[ACTION ON PENAL BOND, GIVEN BY PLANK-ROAD COMPANY, FOR MONEY LOANED BY STATE FROM TWO-PER-CENT. FUND.]

1. *Amendment of complaint; premature commencement of action.*—Where a plank-road company gave two bonds to the State, in consideration of the loan of a portion of the two-per-cent. fund, bearing even date, and executed by the same parties ; one conditioned for the faithful application of the money, annual reports to the governor, and the completion of the road within a specified period, and the other conditioned for the return of the money when due,—*held*, in an action on the first bond for a breach, that the complaint could not be amended so as to include in the cause of action the second bond, which became due after the commencement of the suit, without the averment of some breach having the effect to make it due before that time.

2. *Measure of damages, for breach of penal bond.*—In an action on a penal bond, given to the State by a plank-road company, in consideration of a loan of a portion of the two-per-cent. fund ; conditioned for the faithful application of the money, annual reports to the governor, and the completion of the road within a specified time, but containing no condition for the return of the money,—the measure of damages for a breach is the damage proved to have been actually sustained, and not the amount of the money loaned.

3. *Payment in Confederate currency, in 1864, for money loaned by State in 1853.*—A payment in Confederate currency, in 1864, to the acting treasurer of the State at that time, is not a proper credit on a debt due to the State by an incorporated plank-road company, for a portion of the two-per-cent. fund loaned to said company in 1853.

4. *Release by creditor of one of several co-sureties on penal bond.*—A release by the creditor, for valuable consideration, of one of several co-sureties on a penal bond, is not a release or discharge of the others, except to the extent of his liability to them for contribution under the statute, (Revised Code, § 3072,) when some of them are insolvent ; but, to that extent, it is a release and discharge of the others, although it contains an express stipulation, that it "is not in any manner to affect or operate as a discharge of the liabilities of the other obligors in said bond, or to affect or discharge any action or right of action against them."

APPEAL from Circuit Court of Marengo.

Tried before the Hon. LUTHER R. SMITH.

THIS action was brought by "the governor of the State of Alabama," against Robert Jémison, H. A. Tayloe, Gotlieb Breitling, Nathan Bradley, James Manning, and William H. Roberts; and was commenced on the 6th September, 1860. Breitling, Manning and Roberts died pending the suit, and the action was prosecuted to judgment against Jemison and Tayloe, who alone defended it. The action was founded on a penal bond, of which the following is a copy :

"The State of Alabama, } Know all men, by these presents, that we, the Marengo Plank or Covered Road Company, as principal, and Henry A. Tayloe, Robert Jemison, jr., Gotlieb Breitling, Nathan Bradley, James Manning, and William H. Roberts, as sureties, are held and firmly bound unto Henry W. Collier, Governor of the State of Alabama, and his successors in office, in the penal sum of eighteen thousand nine hundred and fifty-four 94-100 dollars; for the payment of which, well and truly to be made and done, we bind ourselves, our heirs, executors and administrators, jointly and severally, firmly by these presents : In witness whereof, I, Gotlieb Breitling, the President of said Marengo Plank or Covered Road Company, have hereunto put my hand, and affixed the seal of said company ; and we, the remaining obligors, have hereunto put our hands and seals, this thirteenth day of December, 1853.

" *Whereas*, under the provisions of an act entitled 'An act to dispose of the unappropriated portion of the two-per-cent. fund,' approved the 9th day of February, 1850, the Governor of the State of Alabama is authorized to loan such portion of said fund as is designated in said act, to such company or companies as may have been or hereafter shall be chartered by the State, and organized to construct a rail-road or plank-road extending any portion of the route from Cahaba, in the direction of Jackson, Mississippi, in the same manner, and on the same conditions, and upon complying with the same terms, as was authorized and required in respect to the loan made to the Montgomery and West Point Rail-Road Company, accord-

ing to the first, fourth, fifth, sixth, seventh, and tenth sections of an act entitled 'An act to loan the two-per-cent. fund to the Montgomery and West Point and West Point and Tennessee and Coosa Rail-Road Companies,' approved 23d January, 1845 : *And whereas*, on the first day of March, 1851, an association was made and entered into, by the name and style of the Marengo Plank or Covered Road Company, under the provisions, and by the authority of an act, entitled 'An act to incorporate the Marengo Plank or Covered Road Company,' approved 5th of February, 1850 : *and whereas*, under and by virtue of said act of incorporation, books were opened for subscription for stock in said company, within ninety days after the passage and approval of said act of incorporation : *and whereas*, twenty thousand and nine hundred dollars was subscribed, and ten per cent. of said sum paid in cash by the subscribers, at the time of subscribing : *and whereas*, the stockholders, after the said sum of twenty thousand nine hundred dollars was subscribed, met and organized said company, by electing a president and other officers of their body, proceeded to conduct and manage the business of said company: *and whereas*, the Governor of the State of Alabama was authorized to loan to such company a portion of the unappropriated two-per-cent. fund, equal to the distance from Woodville to Demopolis, compared to the distance from Cahaba to the Mississippi line, upon certain bond being given : *and whereas*, this bond is given under the first and tenth sections of the act specially referred to in the act approved the 9th day of February, 1850, loaning said fund to such company :—

" Now, therefore, the conditions of this bond are, that if the Marengo Plank or Covered Road Company shall complete and put into operation their road within fifteen years from the date of their charter, or act of incorporation, as required by the fourteenth section of the said act of incorporation, approved on the 5th day of February, 1850, as aforesaid ; and if the President and Directors of said Marengo Plank or Covered Road Company shall make an annual report to the Governor of the said State for the

time being, immediately preceding the session of the legislature, of the extent of the construction, and condition of said road, and the amount of said fund expended; to whom paid, and for what purpose applied; and if the said Marengo Plank or Covered Road Company shall faithfully apply said money loaned, with due and proper diligence, to the construction of said road, and shall fully and faithfully comply with and fulfill all the conditions and provisions contained in the fourth, fifth, sixth, and seventh sections of said act referred to, so far as applicable to them: then this bond shall be null and void, otherwise to be and remain in full force and virtue.

"And it is further agreed, that if there shall be a failure to comply with the conditions above expressed, and contained in the fourth, fifth, sixth, and seventh sections of the said act, or should the President and Directors of the Marengo Plank or Covered Road Company, after a demand made of them by the Governor of the State aforesaid for the time being, fail to give additional security within sixty days after such demand, this bond shall be considered due, and may be sued forthwith."

(Signed by said Breitling, as president of said plank-road company, and by all the defendants individually.)

The complaint contained three counts, each of which averred the execution of the bond, and set out its conditions and provisions, but not *in totidem verbis;* and each specified four breaches of the bond, which were, in substance, the same, namely, the failure of said plank-road company to make annual reports to the governor. The defendants demurred to the complaint, and assigned the following causes of demurrer: "1st, that the writing obligatory sued upon does not impose an obligation on the defendants to repay or refund to plaintiff the amount of money therein specified; 2d, that the breaches assigned in said declaration, and in every count thereof, are defective in this, that they do not state the amount of damages claimed by plaintiff, for the alleged failure of said plank-road company to make an annual report to the governor

26

of the State of Alabama for the time being, of the construction and condition of the road for the building of which said money was loaned or advanced, the amount of said fund expended, to whom paid, and for what purpose applied; 3d, that there is no breach alleged in said declaration, or any count thereof, of any breach of a promise or obligation to repay said sum of money mentioned in said writing obligatory; and, 4th, because plaintiff's said declaration, and the breaches assigned in each of said counts, would not authorize a judgment for the recovery of the amount of said writing obligatory."

The court overruled the demurrer, and allowed the plaintiff to amend his complaint, " by inserting therein the following words : 'For that whereas, the plaintiff, by (?) the governor of the State, heretofore, to-wit, on the 13th day of December, 1853, lent to the Marengo Plank or Covered Road Company, a corporation, the sum of $9,470 47, of the fund hereinafter specified, under and by virtue of the acts of the legislature of the State, and the bond of defendants hereinafter specified." The defendants excepted to the allowance of this amendment, and demurred to the complaint as amended, on the following grounds : " 1st, that the suit, as shown by the writ and declaration, is founded upon a writing obligatory, under seal, against sureties, and no fact can be alleged outside of said writing obligatory, and inconsistent with the terms thereof, to add to the obligation of the contract in writing ; 2d, that the defendants, being sued as sureties, as shown by the writing sued on, have the legal right to stand upon the written contract as made, and the amendment allowed is inconsistent with the written contract sued on."

The court overruled this demurrer, and the defendants then filed five pleas, "in short by consent;" the first of which was payment and satisfaction, the last performance, and the others in the following words : " 2. Defendants plead and aver, that they are and were accommodation sureties only of G. Breitling, president of the Marengo Plank or Covered Road Company ; that by deed of assignment in trust, made by said plank-road company, to

one Alex. M. McDowell as trustee, a security to the plaintiff was provided, consisting of choses in action, promissory notes made by said G. Breitling, the principal in said bond, and money in the hands of said Breitling, of value fully sufficient to pay said bond now sued on; and by a contract and arrangement between said plaintiff and the legal representatives of said Breitling, he having died, the estate of said Breitling has been released and discharged from the payment of said bond; whereby these defendants were deprived of the legal application of the security aforesaid, and are discharged therefrom as such sureties. 3. Defendants further plead and aver, that the amount of money specified in said bond was fully secured to the plaintiff by said plank-road company, in a transfer and assignment of choses in action, debts, and promissory notes, made by G. Breitling, of value and amount sufficient to pay said bond; and the said plaintiff has released and discharged the estate of Breitling from the payment of said bond, and thereby deprived these defendants of the benefit of said security. 4. Defendants further plead, that the plaintiff was not damnified by any failure to make the report referred to and complained of in the breaches assigned in the declaration." A demurrer was interposed to the second and third pleas, but the record does not show what action was had on it.

On the trial, at the October term, 1870, as the bill of exceptions states, " the plaintiff read in evidence to the jury the bond described in the complaint, and then offered in evidence another bond, or written obligation, not the foundation of the suit, in the words and figures following, to-wit:" [The bond here set out is identical with the former, except in the conditions, which are in these words:]

" The State of Alabama, ⎰ Know all men by these presents, Marengo County. ⎱ that we, the Marengo Plank or Covered Road Company, as principal, and Gotlieb Breitling, Henry A. Tayloe, Nathan Bradley, James Manning, Robert Jemison, Jr., and William H. Roberts, as sureties, are held and firmly bound unto Henry W. Collier, Governor of the State of Alabama, and his successors in

office, in the penal sum of eighteen thousand nine hundred and fifty-four 94-100 dollars; for the payment of which, well and truly to be made and done, we bind ourselves, our heirs, executors and administrators, jointly and severally, firmly by these presents. In witness whereof, I, Gotlieb Breitling, the President of said Marengo Plank or Covered Road. Company, have hereunto put my hand, and affixed the seal of said company; and we, the remaining obligors, have hereunto put our hands and seals, this 13th day of December, one thousand eight hundred and fifty-three (1853).

"*Whereas,* under the provisions of an act, entitled 'An act to dispose of the unappropriated portion of the two-per-cent. fund,' approved the ninth day of February, 1850, the Governor of the State of Alabama is authorized to loan such portion of said fund as is designated in said act, to such company or companies as may have been or hereafter shall be chartered by the State, and organized to construct a rail-road or.plank-road, extending any portion of the route from Cahaba, in the direction of Jackson, Mississippi, in the same manner, and on the same conditions, and upon complying with the same terms, as was authorized and required in respect to the loan made to the Montgomery and West Point Rail-Road Company, according to the first, fourth, fifth, sixth, seventh and tenth sections of an act, entitled 'An act to loan the two-per-cent. fund to the Montgomery and West Point, and Tennessee and Coosa Rail-Road Companies,' approved 23d of January, 1845: *And whereas,* on the 1st·day of March, 1851, an association was made and entered into, by the name and style of the ·Marengo Plank or Covered Road Company, under the provisions and by the authority of an act, entitled 'An act to incorporate the Marengo Plank or Covered Road Company,' approved February 5th, 1850: *and whereas,* under and by·virtue of said act of incorporation, books were opened for subscription for stock in said company, within ninety days after the passage and approval of said act of incorporation: *and whereas,* twenty thousand nine hundred dollars was actually subscribed, and ten-per-

cent. of the said sum paid in by the subscribers, in cash, at the time of subscribing : *and whereas*, the stockholders, after the said sum of twenty thousand nine hundred dollars was subscribed, met and organized said company, by electing a board of directors, on the first day of March, in the year one thousand eight hundred and fifty-one, who, after electing a president, and other officers of their body, proceeded to manage the business of said company : *and whereas*, the governor of the State of Alabama was authorized to loan to such company a portion of the unappropriated two-per-cent. fund equal to the distance from Woodville to Demopolis, compared to the distance from Cahaba to the Mississippi line, upon certain bond being given : *and whereas*, this bond is given under the first and tenth sections of the act specially referred to in the act approved the 9th day of February, 1850, loaning said fund to such company :

" Now, therefore, if faithful payment of the sum of nine thousand four hundred and seventy-seven 47-100 dollars, being the amount of the sum so loaned to the Marengo Plank or Covered Road Company, be made by said obligors, or any, or either of them, at the expiration of ten years from the date of this bond, together with the interest which shall accrue thereon, payable annually, at the rate of five per cent. per annum, for the last five of the said ten years : And if the president and directors of the said Marengo Plank or Covered Road Company shall, within sixty days after a demand made of them by the governor of said State for the time being, give additional security upon this bond, and shall in all respects fully and faithfully perform and comply with the provisions contained in the first and tenth sections of said act referred to, then this bond shall be void, else shall remain in full force and virtue : and if additional security be not given, as required, within sixty days as aforesaid, then this bond shall be considered as due, and may be sued forthwith by the governor of the State for the time being."

(Signed by all the parties to the first bond.)

The defendants objected to the introduction of this bond

as evidence in this suit; but the court overruled their objection, and allowed said bond to go to the jury; to which ruling the defendants excepted.

"The defendants introduced A. M. McDowell as a witness, who testified, that said plank-road company, somewhere about the year ——, (G. Breitling, the president, being present, and participating in the act,) adopted a resolution, which was copied upon their minutes, and by which they assigned or transferred to him, as trustee, certain assets of the company, consisting in part of a debt against O. B. Boddie, amounting to some $4,000, notes of said Breitling to said plank-road company, amounting to several thousand dollars, and other assets; that these assets, at the time of the adoption of said resolution, were of value about sufficient to repay the amount of said loan by the State to said plank-road company; and that he was instructed, by the resolution of the board, to first pay the debt due to the State for said loan. Witness said, that the assets were about enough to pay that debt, if he could have collected all, but that he had collected very little besides the Boddie debt; that this debt was collected in Confederate currency; that, on the 7th day of March, 1864, he paid over to Duncan Graham, who then claimed to act as treasurer of the State, the sum of $3,758 50, in Confederate treasury-notes, and took his receipt therefor." The treasurer's receipt for this payment was produced by the witness, and expressed on its face that the money was "in part payment of loan to said company from two-per-cent. fund." The witness further testified, that the books of said plank-road company, showing said assignment or resolution, had been lost or destroyed.

The defendants then read in evidence to the jury, after proving its execution, a receipt in the following words: "Received, this 27th February, 1868, of Alfred Breitling, as executor of the estate of G. Breitling, deceased, the sum of one thousand dollars, in compromise and full payment and discharge of the liabilities of said deceased, and of his executor, on or for a certain bond executed by the Marengo Plank or Covered Road Company, and by Henry

A. Tayloe, Robert Jemison, Nathan Bradley, James Manning, William H. Roberts, and the said G. Breitling, to H. W. Collier, governor of the State of Alabama, in·the penal sum of $18,954 94, bearing date the 13th December, 1853, and now in suit in the circuit court of Marengo county, Alabama, against some of the obligors. But this compromise and discharge of the liability of the said Breitling and his executor, is not in any manner to affect or operate as a discharge of the liabilities of the · other obligors in said bond, or to affect or discharge any action or right of action against them." (This receipt was signed by W. M. Brooks and W. E. Clarke, "attorneys for the plaintiff in said suit, and for the State of Alabama, and the parties entitled to the money specified in said bond.") "The defendants also offered testimony to prove that the estate of said G. Breitling was solvent when said release was given, and is now solvent, and able to pay its debts" ; but the court excluded this testimony, and the defendants excepted.

The defendants also offered in evidence to the jury two notes signed by said G. Breitling, of which the following are copies :

"Demopolis,·Ala., Sept. 25, 1854.

" On or before the 21st day of January, 1855, we jointly and severally promise to pay to the president and directors of the Marengo Plank or Covered Road Company twelve hundred dollars, for value received ; it being for twenty-eight shares of stock in said road, transferred to G. Breitling, W. H. Roberts, and A. M. McDowell, under the style of Gotlieb· Breitling & Co., by Nathan Bradley, in consideration of their assuming the above amount due the two-per-cent. fund by said N. Bradley ; of which the said McDowell has paid his part to the said G. Breitling, which leaves one-third of the above amount to be paid by Wm. H. Roberts, and two-thirds to be paid by said G. Breitling, for which they have given this note."

(Signed by G. Breitling and Wm. H. Roberts.)

" $1,530 74. One day after date, I promise to pay to Alex. M. McDowell, as treasurer of the Marengo Plank or

Covered Road Company, and for the use of said company, the sum of fifteen hundred and thirty 74-100 dollars, being part of the two-per-cent. fund borrowed by said company from the State, and placed in the hands of W. W. Allen & Co., subject to the orders of the president of said company, and paid to me, as shown by the account-current of the said W. W. Allen & Co., including interest to date, as per account rendered me by said treasurer; it being my intention to bind myself to pay the said Alex. M. McDowell, as treasurer, the amount above specified, with lawful interest from this date till paid. August 9, 1858."

This last note was signed by G. Breitling, and had endorsed on it a credit, signed by said McDowell as secretary and treasurer, in these words: "Credit, August 9, 1858, by G. Breitling's note, of this date, to the secretary and treasurer of the Marengo Plank or Covered Road Company, for this amount, $389 63, for sum of S. S. Boddie's draft, with interest." Each one of said notes also had two other endorsements, one acknowledging presentation as a claim against said Breitling's estate, which was signed by his executors; and the other, which was signed, "A. M. McDowell, trustee, &c., by J. T. Jones, attorney," in these words: "Settled by A. Breitling, executor of G. Breitling, Feb. 18, 1867." The witness A. M. McDowell testified, "that he had compromised these two notes, with Breitling's executor, before the estate was released from liability on the bond." The court rejected these notes as evidence in the cause, and the defendants excepted.

"Upon the foregoing facts, the court charged the jury—

"1. That if said corporation, called the Marengo Plank or Covered Road Company, had failed to comply with the provisions in the bond, requiring said company to make annual reports, then the said bond was forfeited, and the plaintiff had the right to recover the amount of money lent by the State to said corporation, with interest thereon from the time of the session of the legislature at which said company had failed to make said report; and that they might look to the bonds in evidence, to ascertain the amount of money lent by the State to said company.

"2. That if they believed, from the testimony, that the money paid by McDowell to D. Graham, on the debt now sued for, was paid in Confederate currency, no credit could be allowed for the amount so paid, because Confederate currency was illegal, and said D. Graham was not the treasurer of the State at that time."

The defendants excepted to each of these charges, and then requested the following charges in writing:

"1. That the obligation sued on, and described in the plaintiff's declaration, and set out on oyer, is the foundation of this action, and the one to be examined and considered by the jury, as containing the defendant's liability.

"2. That if the jury believed, from the evidence, and from an inspection of the bond sued on, that it contained no obligation or promise on the part of the defendants to repay the plaintiff any fixed or specified sum of money, then the plaintiff can only recover such damages as the proof may show the State has sustained under the several assignments of breaches in the plaintiff's declaration; and if no proof has been adduced of the extent of damages sustained by the State, then only nominal damages can be recovered by the State in this suit.

"3. That there being no statement in the bond, as to the amount of money loaned to the said plank-road company, or as to the terms of the loan, or as to the rate of interest to be paid, or stipulations for the return or repayment of the money, the sureties are not liable, in the present action, for the money loaned.

"4. That if the jury believe, from the evidence, that the plaintiff has released Breitling's estate from all further liability to the State on the bond, such discharge [operates] as a release of the defendants Jemison and Tayloe.

"5. That if the jury believe, from the evidence, that the sum sued for was loaned by the State to said plank-road company, under an act of the legislature authorizing the same to be loaned for ten years, five of which were without interest, and five at the rate of five per cent. interest, and the suit was brought before the expiration of ten years from the date of the loan, then the plaintiff has no right

to recover in this action, unless the proof shows that, before the suit was brought, the said plank-road company was notified by the governor to give new security, and failed to do so.

" 6. That the absence of proof that the defendants failed to make reports to the general assembly of the progress of the work, and to perform the other breaches assigned in the declaration, did not, in the absence of notice and demand by the governor for new security, authorize a suit to be maintained for the sum loaned, before the expiration of ten years."

The court gave the first charge asked, and refused each of the others; to which refusals exceptions were reserved by the defendants.

The errors assigned in this court embrace all the rulings of the court below, which, as above stated, were adverse to the defendants.

LYON & JONES, for appellants.—1. The bond sued on contains no condition whatever for the repayment of the money, and the complaint contained, of course, no breach alleging a non-payment. The amendment to the complaint ought not to have been allowed. The action being founded on a penal bond with condition, assigning breaches, the declaration must be confined to the bond; and the plaintiff can not recover on proof of any facts outside of the condition and the breaches assigned.

2. The only breaches assigned in the complaint, were the failure of the corporation to make annual reports to the governor, or to the general assembly, as required by the condition of the bond; and there was no proof whatever of such failure. Consequently, the plaintiff could not recover at all under his complaint.

3. The second bond, which was introduced in evidence to the jury against the defendants' objection, was not, by its terms, due until several years after the commencement of the suit. Of course, no recovery could be had under it, even if an appropriate breach had been assigned.

4. The penalty of the bond was not, in any event, the

measure of the plaintiff's damages. He could only recover the damages averred and proved.—Sedgwick on Damages, 396, 416.

5. The release of Breitling's estate operated as a discharge of his sureties and co-sureties.—2 Amer. L. Cases, 146 ; 1 Ala. 23 ; *Hays v. Ward*, 4 Johns. Ch. 123 ; 11 Wendell, 312 ; 2 Bailey, 531 ; 2 Grattan, 144 ; 1 Blackf. 392.

6. The defendants were entitled to a credit for the Confederate currency paid to the State treasurer in 1864, as those funds were proved to have been accepted in part payment.

W. M. BROOKS, *contra*. (No brief on file.)

B. F. SAFFOLD, J.—The facts of this case pertinent to the issues to be decided are these : The Marengo Plank or Covered Road Company, incorporated February 5, 1850, applied for and received a proportion of the two-per-cent· fund, under an act passed February 9, 1850, disposing of the portion unappropriated at that time, subject to the conditions prescribed in an act passed January 23, 1845, to loan the two-per-cent. fund to the Montgomery & West Point and Tennessee & Coosa Railroad Companies. In consideration of this loan, the said company executed two bonds, with the defendants as sureties, on the 13th of December, 1853. Both recite that they are made under the 1st and 10th sections of the act of January 23, 1845. The first of these sections required a bond or bonds, with sufficient security, for the payment of the money at the end of ten years from the date of the bond, with five per cent. interest for the last five years of the time. The second authorized the governor to demand additional security at any time, if he deemed it necessary, and on the failure of the company to give the additional security within sixty days, the bond or bonds already given should be considered due, and the governor should institute suit for the recovery of the money.

The bonds, however, differed from each other in some important particulars. One of them, the foundation of

this suit, was conditioned, that the said Plank Road Company should complete their road within fifteen years from the date of their charter, make an annual report to the governor of the extent of the construction of the road, and of its condition, and the amount of said fund expended, to whom paid, and for what purpose applied; for the faithful application of the money, with due diligence, to the construction of the road; and the fulfillment of the conditions expressed in the fourth, fifth, sixth and seventh sections of the act of 1845. The substance of the fourth section (the report to the governor) has already been stated. The fifth section, after enumerating the terms above stated, contains the additional provision, that if the money loaned should not be faithfully applied, with due and proper diligence, to the construction of the road, the governor is required to institute suit upon the bond or bonds mentioned in sections two and three for the recovery of the money loaned. The said sections require bonds for the completion of the road within the time specified by the charter. The sixth section authorizes the company to give bond for the ultimate payment of the money. The seventh section makes all the bonds given under the act a lien upon the road.

The other bond stipulated for the return of the money within ten years. In default for sixty days of additional security on demand of the governor, both bonds were to become due. The first was also, by its terms, to be considered due on a breach of any of its conditions.

The suit was commenced September 6, 1860, and was founded exclusively on the first bond. The only breach averred was the failure to report annually to the governor, as required by the fourth section. At a term of the court held in October, 1860, the complaint was amended by inserting therein these words: "For that, whereas the plaintiff, by the governor of the State, heretofore, to-wit, on the 13th day of December, 1853, lent to the Marengo Plank or Covered Road Company, a corporation, the sum of $9,470.47 of the fund hereinafter specified, under and by virtue of the acts of the legislature of the State and the

bond of the defendant hereinafter specified." Under this amendment the second bond was given in evidence.

From the above statement, it is plain that the second bond was not due at the time the suit was commenced, whether by the expiration of the time for which the money was lent, or the failure to give additional security, none having been required. If the amendment of the complaint was intended as an incorporation of this second bond into the foundation of the suit, it would present the case of a suit upon a cause of action accrued after its commencement, at least, without the averment of some breach by which it became sooner due.

Both of the bonds might have been considered as one, because together they scarcely comply with the provisions of the act under which they were executed. They might have been included in the same complaint, with averments of proper breaches, if such existed. The only breach assigned is the failure to make annual reports to the governor. This was a breach of the first, but not of the second. The first contained no provision for the repayment of the money. It was a penal bond, falling due on its breach, and recoverable upon to the extent of the damage sustained.

The act of 1845 required the recovery of the money before the time for which it was loaned, in two instances only. One, when the governor became satisfied that the company was not faithfully and diligently applying it to the construction of the road. This was to be a condition of a bond to secure the completion of the road within the time required by the charter, as provided in section 2. The other, when default was made in giving additional security. The money being due on the commission of these breaches, the most evident course seems to be to include in the complaint the bond securing the payment of the money, and, regarding both as one, allege the reasons why it has become due. This may be done by amendment of the complaint, if the facts justify it.

Sedgwick says, that in the case of an agreement to do, or refrain from doing any particular act, secured by a pen-

alty, the amount of the penalty is in no sense the measure of compensation ; and the plaintiff must show the particular injury of which he complains, and have his damages assessed by a jury. It may, therefore, be laid down as a settled rule, that no other sum can be recovered under a penalty than that which shall compensate the plaintiff for his actual loss.—Sedgwick on Damages, 396, 410. Section 2633, Revised Code, requires the assignment of such breaches as the plaintiff may deem proper, and authorizes a verdict and judgment for such as he may prove ; and if judgment be rendered for the plaintiff on demurrer, or by default, a writ of inquiry of damages must be awarded. The court erred in charging the jury, that the failure of the company to make annual reports authorized the recovery of the money lent with interest from the date of the first default.

3. There is no error in the charge that the payment made by McDowell to Graham, as treasurer of the State, in Confederate currency, in 1864, was not a proper credit. The fund loaned was one which the State held in trust, and it was against public policy to allow an insurrectionary government, not recognized by the political department of the United States government as *de facto*, to dispose of the credits of the State.

4. The release of the estate of G. Breitling from further liability on the bonds, did not have the effect to discharge his co-sureties, any further than his liability to them under section 3072, par. 2, of the Revised Code ; but to that extent it did. They had a right, under that section, to regard him as a solvent co-surety, and to require of him his proportion of any excess over their respective shares of the common liability which they should pay. From this obligation the creditor could not release him against the other sureties, and, consequently, his demand must be credited, in favor of the co-sureties, with the full amount of Breitling's share as ascertained by section 3072, Revised Code. *Ex parte Gifford*, 6 Vesey, 805 ; *Klingensmith v. Klingensmith's Ex'rs*, 31 Penn. St. 460 ; Burge on Suretyship, 386 ; *White v. Banks*, 21 Ala. 705. The right of sureties

to contribution from each other is the result, not of any implied contract between the parties, but of justice, which divides in equal proportions a common burden voluntarily assumed.

The plaintiff could not deprive the defendants of their interest in the assignment made by the plank-road company to McDowell, and we do not think the release given to Breitling extended so far, or was intended to do so. The discharge was of the liabilities on the bonds. The assignment was of debts due from Breitling to the company.

The judgment is reversed, and the cause remanded.