[Springfield Fire & Marine Insurance Co. v. DeJarnett.]

There may be instances where a person becoming interested by assignment of, or in succession to, a party to the record, may, upon showing his interest, be permitted to appeal, or intervene, and assign errors ; or, it may be, bring in a bill of review ; but, in so doing, he must take the record as he finds it. He cannot upon facts existing when the decree was rendered and for the non-introduction of which into the original cause, no excuse is shown, make a new case. Nor can an original party do so. Counsel seem to recognize these indisputable propositions, and undertake to justify the introduction of the agreement, if we understand correctly, as the means of showing complainants' right to assign errors. Taken for that purpose, it is wholly unnecessary. Complainants were parties to the foreclosure proceedings, and have the right to assign any errors, apparent upon the record, if there were any, prejudicial to them. Their father having died prior to the foreclosure suit, they had no interest, absolute or contingent, to be prejudiced by the decree.

The motions to dismiss the bill for want of equity were properly sustained.

Affirmed.

# Springfield Fire & Marine Insurance Co. v. DeJarnett.

*Action on Policy of Insurance against Fire.*

1. *Pleading and practice; mode of objecting to amendment of complaint; when motion to strike and not a demurrer is the proper remedy.*—Unless the cause of action contained in a new count, sought to be added by amendment to a complaint, is such that it can not be joined with that stated in the original complaint, the proper mode of objecting to the amendment by the addition of said new count, notwithstanding it sets up a cause of action different from that in the original complaint, is by a motion to strike out the amendment, and not by interposing a demurrer.

2. *Amendment of complaint by adding new counts; what does not constitute a departure.*—To a complaint counting upon the breach of a written contract of insurance against fire, counts setting up the breach

[Springfield Fire & Marine Insurance Co. v. DeJarnett.]

of a verbal contract of insurance of the same property against fire, and the breach of an agreement to issue a policy insuring said property against fire, may be added by amendment; and such amendment does not constitute a departure from the original cause of action.

3. *Statute of frauds; when contract of fire insurance is not within it.* A contract of insurance against fire for three years is not an "agreement which, by its terms, is not to be performed within one year from the making thereof," within the meaning of the statute of frauds, as performance of the contract may be required at any time after a loss covered by its terms: and it is not .necessary for the validity of such a contract that it should be in writing.

4. *Clerk of agent; when his acts or statements do not bind the principal of the agent.*—A principal is not bound by the acts or statements of the clerk of his agent, employed by the agent for his own convenience, without authority of the principal of the agent, express or implied, and without his knowledge of such acts or statements or employment; and evidence of the employment of such clerk, and of the scope of his authority from his employer, is not competent against the original principal.

Appeal from the City Court of Birmingham.

Tried before the Hon. H. A. Sharpe.

This was an action brought by the appellee, Hugh M. DeJarnett, against the appellant, the Springfield Fire & Marine Insurance Company, to recover upon a contract of insurance, for the destruction of a small house in the town of Cleveland, Jefferson county, Alabama.

The facts are so few upon which there is an agreement, that it is scarcely necessary to note them. Almost every fact in the case is controverted, except that appellee desired insurance. The facts of the case, as gathered from the bill of exceptions may be summerized as follows: II. M. DeJarnett, plaintiff, on the 24th of March, 1893, insured a house with appellant in Cleveland for one year and received as an evidence of that insurance, a policy numbered 989, made exhibit "A" to the bill of exceptions in this case. About the 10th of April he applied to the defendant to have this policy extended for three years from March 24, 1893, so as to make the policy expire March 24th, 1896. During the month of November, 1893, he applied at the office of James A. Going, the defendant's agent at Birmingham, to insure a small house which was burned December 13, 1893. He sent his brother with money to the office of Going, who did not find Going in the office, but found a son of Going

by the name of Richard, who was not employed in the office. To this young man he made known that he wanted to procure insurance for appellee on a little house that had been moved from one lot to the lot on which it was situated. He testified that he had paid a premium of $1.50 and took a receipt, giving a description of the property to be insured. That going out of the office he met Going, the agent, who upon being told what he had done, refused to accept the proposed insurance, but according to this witness said that he would arrange the insurance by inserting a description in the policy he already had. The money was returned to him and the receipt surrendered. Both James A. Going and the son substantially contradicted this witness in this particular. Both say that he did not meet James A. Going while going out of the office, and both say no receipt was given or surrendered. James A. Going says that from some DeJarnett he knew of such application. This witness further states that he reported to appellee his version of the conversation. Plaintiff in his testimony states that on the 20th of November, 1893, in company with another brother, he went to the office of Going, the agent, did not find the agent in, but found his son Henry, whom he knew as an employé in the office, as a clerk and bookkeeper; that he had dealt with James A. Going for four or five years and knew James A. Going to be the agent and his son Henry to be a clerk of James A. Going. He knew that Henry Going did the clerical work on the policies, filled up policies, gave receipts for money paid on premiums, signing James A. Going's name to such receipts, but that he did not sign the policies; that all his policies (he had had several from James A. Going) were signed at the bottom of the policies by James A. Going himself, in his own handwriting. Plaintiff paid to Henry Going $18, $5 for himself, $5 for a brother, and $8 for his father, taking three separate receipts, but paying as he states, on four different policies. The receipt taken for the payment of his own account bears date November 20, 1893, and on its face purports to be for $5 paid on premium due on policy 987, which the testimony shows to have been intended for 989. He stated that that $3 of the $5 he paid for the insurance on the little house that he desired to insure, and $2 on what he still

owed on the original policy number 989, which was $10, leaving a balance due on old account of $8; that when he paid the $3, he told Henry Going he desired insurance on this little house and that his father had stated that it could be inserted in the old policy; that Henry Going replied that his father had told him about it and that he would fix it up for him, exhibiting a blue slip of paper on which the description of the property to be insured would be made out and be inserted into the policy. Plaintiff further testified that he did not have the policy 989 with him, and that Henry told him to bring it up or send it up, and he would fix it up for him. On this subject, Henry Going testified that the money was not paid on account of any new insurance, that after the money had been paid and when he was writing out the three receipts, plaintiff stated to him that he wanted to insure this little house, but that James A. Going refused to insure it on account of the amount desired. To this Henry replied that that being the case, he could do nothing further, but suggested to appellee to send up or bring up the policy and he would see if the matter could not be arranged by inserting the new risk in the former policy 989; that he did not exhibit any blue slip, because they used no such colored blanks with the policies issued by defendant; that this was the first time he had ever heard of this risk; that his father, the agent, had never said anything to him about it and he knew nothing about such insurance being wanted; and that his father had not directed him what to do in the matter. James A. Going, on this subject ject, testified that he had not instructed his son to insure this house by inserting a description of it in the old policy, and never had heard of such an application before his son spoke of it to him on a subsequent occasion, and then he declined it. On the 25th of November, a sister of plaintiff came into the office, finding Henry Going there and not finding James A. Going there, delivered the policy to Henry Going, telling him, in substance, that her brother had sent up the policy to be fixed up, and that Henry Going told her that his father directed him what to do. Upon this subject Henry Going testifies that he did not tell her that his father had told him what to do, but that plaintiff had told him what he wanted, and that he would see his father about the mat-

ter. Henry Going further testified that when his father
came into the office, the policy was lying on the desk,
and he told his father what plaintiff wanted and what
the policy had been sent up for, and that James A.
Going then stated that he would not take the risk, and
that it could not be done. Another brother
of plaintiff testified that after the house was
burned, he went at the instance of plaintiff to the
office of James A. Going and told him that he had come
there for that policy that belonged to plaintiff, and that
the house had been burned ; that Going then stated that
he had no policy on the little house ; that he had a pol-
icy on the other house, but that he had been ordered by
the agent not to insure the little house. Going, in sub-
stance, denies this conversation. He admits that a
DeJarnett called for the policy and that he had told him
that he had no insurance upon the house that was
burned, but did not tell him that the agent had forbid-
den it. He had told the father of plaintiff about the
25th of November, when he cancelled a policy for the
father, that the special agent of the defendant had for-
bidden insurance on property for a smaller amount than
$500. Plaintiff also testified that he called for the pol-
icy and was told by Going that there was no insurance
on the house, and that he stated to Going at that time
that he had paid for insurance and thought that his
house was insured. The house was shown by plaintiff's
testimony to be worth from $250 to $300. The testi-
mony further showed that James A. Going did business
under a commission executed to him by appellant for
Jefferson county and vicinity of Birmingham ; and that
commission directed him to take applications for risks
and issue policies and to grant extensions where policies
had been issued. The proof showed that this agent re-
ceived the policies in blank, signed by the president, and
that the policies were not of any force until counter-
signed by James A. Going, agent ; that daily reports of
the business transacted in the office were made to the
defendant always signed by James A. Going, and that
the defendant did not know Henry Going as an agent,
and that Henry Going had never assumed to act as agent
or to do any business in the office except clerical work
and as book-keeper.

The 5th and 6th counts of the complaint allege that

the house proposed to be insured, and which was burned, was adjoining a dwelling house already insured in and by policy number 989. The proof showed that the house burned and for the destruction of which this suit was brought, was not adjoining the house insured in policy 989, but was on another lot not less than fifty feet distant, and from the proof of one witness, at least 100 feet distant, and separated from the house previously insured by an alley and a fence, so that in no sense could the house burned be said to be adjoining the house previously insured.

The complaint originally consisted of two counts in the form prescribed by the Code, and both counts purport to be upon a policy of insurance. To the complaint as originally filed, defendant pleaded, *non est factum*, the general denial, want of consideration and the contract bar of twelve months When the case was called for trial, plaintiff had leave of the court to file four additional counts, marked, respectively, third, fourth, fifth and sixth. The third count counted on a contract of insurance, not mentioning whether it was by policy or not. The fourth count counted on a verbal contract of insurance, giving the neighborhood where the house was burnt. The fifth count purports to be for a breach of contract to insure the house burnt, by attaching a slip of paper to policy number 989, already held by plaintiff. This count assigns as a breach of the contract that defendant refused and failed to issue a policy showing the insurance of said building. The sixth count is substantially the same as the fifth. The defendant objected to the allowance of the amendment, first, because the amendment introduces a new cause of action into the complaint; and second, because the amendment was a departure from the original complaint. The court overruled this objection and defendant then objected severally to each amendment as offered, and the court overruled each objection so made, and the defendant excepted. The court then allowed plaintiff to file the several amendments to each of which counts the defendant demurred; to each on the ground that the amendment introduces a new cause of action, that the amendment was a departure from the original complaint; and to the fourth, fifth and sixth counts on the additional ground that the cause of action therein stated was within the operation of the

statute of frauds. The court overruled all of these demurrers, and to the complaint as amended appellant pleaded first, *non assumpsit;* second, general denial ; and, third, the statute of frauds, and issue was joined thereon. The other facts of the case are sufficiently stated in the opinion.

Upon the introduction of all the evidence, the defendant requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked : (1.) "Defendant requests the court to charge the jury that in counts five and six of the complaint the house insured is alleged to have been adjoining the house insured in policy No. 989, and if evidence shows that the house burned was not adjoining, then plaintiff can not recover." (2.) "That if the jury believe all the evidence in the case the jury must find for the defendant on the fifth and fixth counts of the complaint." (3.) "That the house alleged to have been insured in the fifth and sixth counts of the complaint is not the house shown in the evidence to have been burned." (4.) "That the case made by the testimony offered by plaintiff shows that the contract to insure was not complete in that it remained to insert a clause in the policy insuring the house for the destruction of which this suit was brought, and the verdict must be for defendant."

There were verdict and judgment for the plaintiff. Thereupon the defendant made a motion for a new trial, on the grounds that the verdict of the jury was contrary to the weight of the evidence ; that the plaintiff failed by a preponderance of the proof to establish his right to recovery ; and that the court erred in its rulings upon the pleadings in allowing the complaint to be amended by the additional counts. This motion was overruled, and the defendant duly excepted thereto.

The defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

WARD & CAMPBELL, for appellant.—1. Where the suit is upon a written contract, the complaint as originally filed can not be amended by adding a count on a verbal contract. This would be introducing a new cause of action in the complaint which is not allowable.—*Mahan v.*

*Smitherman*, 71 Ala. 563 ; *Semple v. Glenn*, 91 Ala. 245 ; *Law v. Pemberton*, 29 N. Y. Sup. 605 ; *Hill v London Assu. Corp.*, 12 N. Y. Sup. 86 ; *Conn. F. Ins. Co. v. Kinne*, 18 Amer. St. Rep. 398. The demurrers to the complaint, as amended, on the ground that there was an introduction of a new cause of action in the complaint, and a departure from the cause as originally made, should have been sustained.—*Rapier v. Gulf City Paper Co.*, 69 Ala. 476 ; Stevens on Pleadings, p. 418 ; 2 Saunders, p. 84, A. note 1 ; 4 Minors Institutes, p. 1147, and authorities cited ; 1 Chitty on Pleadings, (16 Am. ed.), 678.

2. The verbal contract as alleged by the plaintiff was within the statute of frauds, and was, therefore, invalid. 43 Barb. 351 ; *Harrison v. Palmer*, 76 Ala. 157 ; Clements Ins. Dig. p. 53, § 3 ; p. 54, § 16 ; *Johnson v. Conn. Fire Ins. C .*, 84 Ky. 470 ; *Waldman v. N. British &c. Ins. Co.*, 91 Ala. 170 ; 21 Amer. St. Rep. 883 ; *Ruggles v. Amer. Cen. Ins. Co.*, 11 Amer. St. Rep. 674.

3. Henry Going, the son of the defendant's agent, and who was employed in said agent's office, had no authority to bind the defendant, and no statement of account of his, as shown by the evidence, was sufficient to make the defendant responsible.—*Com. Fire Ins. Co. v. Morris*, 105 Ala. 498 ; *Phoenix Ins. Co. v. Copeland*, 86 Ala. 556 ; *Queen Ins. Co. v. Young*, 86 Ala. 424 ; *Waldman v. Ins. Co.*, 91 Ala. 170.

RICHARD H. FRIES, *contra.*—1. A motion to reject or strike and not a demurrer is the proper mode of reaching a variance between an original and amended complaint. *Turner v. Roundtree*, 30 Ala. 707. Amended counts declaring on a loss by fire under a verbal contract of insurance on certain premises are not essentially different from an original count alleging a loss by written contract on the same premises —May on Insurance, § 44.

2. A contract of insurance need not be in writing and is not within the statute of frauds.—*Ins. Co. v. McMillan*, 30 Ala. 711 ; *Com. Fire Ins. Co. v. Morris*, 105 Ala. 498.

3. Agents of foreign insurance companies have necessarily greater powers than agents of domestic companies, and may appoint agents, clerks and sub-agents.—*Syndicate Ins. Co. v. Catchings*, 104 Ala. 176 ; *Piedmont & Arlington Ins. Co. v. Young*, 58 Ala. 476. Foreign insur-

ance companies are responsible for the acts of all persons that act with their authority, or without their authority, if the company in any way avails itself of their acts.— May on Insurance, p. 287, § 154, A.

COLEMAN, J.—The action is to recover damages for the loss of a house destroyed by fire. The complaint, as originally framed, consisted of two counts, counting on a policy of insurance. The complaint was amended by adding four additional counts. The third count was also on a policy of insurance. The fourth count claimed that the house was insured under a verbal agreement. The fifth count averred an agreement to issue a policy of insurance, by extending a policy (989), so as to cover the building, and a breach of the agreement. The sixth count is not very clear. As we construe it, the cause of action is based upon an agreement, by which a policy already held by the plaintiff (No. 989) was to be extended so as to cover the building in question, and this was to be effected "by attaching a slip of paper" to that effect to it, instead of issuing a new policy. The breach assigned in this count was the *refusal and failure to deliver said policy showing the insurance of said frame building, as aforesaid.* The breach averred in this count does not consist in the failure to extend policy 989 so as to cover the frame building, but in the failure to deliver the policy showing the insurance of said frame building. The demurrers to the complaint, and to several of the counts, though in different ways, raise but two questions. The first is, that the cause of action contained in the added counts was a departure from the original cause of action; and, second, that the cause of action laid in the 4th, 5th and 6th counts came within the operation of the statute of frauds, in that the agreement counted on was verbal, and the same was not to be performed within a year.

We are of the opinion that a demurrer is not the proper mode to reach a count added by way of amendment to an original complaint, which count sets up a cause of action different from that alleged in the original complaint, unless the cause of action in the new count is such that it cannot be joined with that of the original complaint. An amendment relates back to the time of the original complaint, and a demurrer to the complaint tests the sufficiency of the complaint as a whole, or, if to

a count, the sufficiency of the particular count. If the demurrer cannot be sustained on one or the other of these grounds, it must be overruled. If there is no misjoinder of causes of action, and each count containing a good cause of action, the demurrer cannot be sustained. A motion to strike the amendment, is the proper remedy, and, if this method is not adopted, the defendant will be held to have waived the right.—*Turner v. Roundtree*, 30 Ala. 706. There was no motion to strike, but the bill of exceptions states that the defendant objected to the allowance of the amendment. The question cannot be said to have been raised with technical accuracy, but it is one of importance, and we will consider it upon its merits.

The only limitation upon amendments, under our statute, is that there must not be an entire change of either parties plaintiff or defendant, nor an entire new cause of action, nor will an amendment be allowed which will authorize a recovery upon a cause of action accruing subsequently to the institution of the suit, nor the adding of a cause of action barred by the statute of limitations at the time of the amendment, nor the addition of a count which will cause a misjoinder of causes of action in the same complaint. With these limitations, the right of amendment cannot be denied.—*Mobile Life Ins. Co. v. Randall*, 74 A. a. 170; *Beavers v. Hardie & Co.*, 59 Ala. 570; *Davis v. Mallon*, 57 Ala. 168; *Johnson v. Martin*, 54 Ala. 271; *Steed v. McIntyre*, 68 Ala. 407; *Mohr v. Lemle*, 69 Ala. 180; *Doe v. Richardson*, 76 Ala. 329; *Jemison v. Governor*, 47 Ala. 390; *Rapier v. Gulf City*, 69 Ala. 476. Exactly what it takes to constitute a new or different cause of action, that may not be added to an original complaint under the statute of amendments, has not been very clearly defined, and different constructions have prevailed in different States. In the case of *Connecticut Fire Ins. Co. v. Kinne*, 77 Mich. 231, s. c. 18 Am. St. Rep. 398, it was held that a complaint upon a written contract of insurance could not be amended by adding a count for a breach of a verbal agreement to deliver a policy of insurance,—a case very much in point, if the statute of amendments of that State is similar to ours. To the same effect is the case of *Hill v. London Assur. Corp.*, 12 N. Y. Supplement 86. Others might be cited. We have always held that the

17

statute of amendments was intended to secure a speedy trial upon the merits, without extra cost, and should be liberally construed. Our decisions have made use of the expression that the amendment should be allowed unless the cause of action was entirely new.—Ala. authorities *supra*. It has been held that a declaration in trover could be 'amended by adding a count in case.—3 Brick. Dig. 31, § 63; *Elmore v. Simon*, 67 Ala. 526. In the case of *Schuessler v. Wilson*, 56 Ala. 516, the court allowed an amendment which under some circumstances might have been held a new cause of action from that declared in the original complaint. In the case of *Rapier v. Gulf City Paper Co.* 69 Ala., *supra*, one of the tests applied was whether the relief sought under the amended bill was the same as that prayed for in the original bill. In the case of *Semple v. Glenn*, 91 Ala. 245, the original action was upon an express contract, and the amend d counts were upon the common counts. This court held that the trial court did not err in excluding the common counts, upon the express grounds that there was "nothing in the record to authorize the presumption that the amendment was not intended to introduce new causes of action, but that a comparison showed that the new counts represented separate and distinct causes of action." To the same effect and for the same reason, was the case of *Mahan v. Smitherman*, 71 Ala. 563. Nothing is more common in our practice than the addition of the common counts by way of amendment to an original complaint. We are therefore of opinion, when a cause exists which entitles a party to compensation, and its refusal is a breach of an agreement, the party entitled to recover may declare by original complaint in different counts, or by original and amended complaint in different counts, upon the agreement, as being in writing and verbal; and also upon an agreement, verbal and written, that defendant agreed to make a contract of indemnity, and for compensation, followed by appropriate breaches, each count showing that the damage or right to compensation to which the plaintiff is entitled arose from one and the same cause, to-wit, in the case at bar, the loss of the house by fire, and that such a complaint does not contain entirely new and different causes of action. Whether suit be upon the policy or by bill in chancery to enforce specific perform-

ance of an agreement to issue a policy, after the loss by fire, the judgment in the one case and the decree in the other, if full relief is sought, will be the same,—that is, compensation or payment in damages resulting from the fire. We considered these questions, but not in this connection, in the case of *Commercial Fire Ins. Co. v. Morris*, 105 Ala. 498.

So far as the demurrer to the several counts added to the original complaint raised the question of the statute of frauds, that question was fully disposed of in the case of *Ins. Co. v. Morris*, 105 Ala. 498, *supra*. It is insisted in argument, that the statute of frauds was pleaded in defense, and the evidence sustained the plea, and that the defendant was entitled to judgment on this plea. This contention grows out of a misapprehension of one of the principles, at least, upon which it is held that the statute of frauds has no application to policies of insurance, and agreements to insure, like those averred in the complaint, and which there was some evidence in the case to support. The statute of frauds declares null and void "every agreement which by its terms is not to be performed within one year from the making thereof." Although a policy or a verbal agreement of insurance may cover a period of three years, its performance may be required one hour after its execution or it had been agreed upon. There is no provision in the policy or agreement by which the party entitled to payment for the loss of the property insured is to be postponed for three years. The statute applies to contracts which "by its terms are not so be performed within a year," and not to contracts which by its terms may require performance within less time.

What has been said suffices to show that the court did not err in refusing to give charges Nos. 2 and 4, requested by the defendant. If the general charge had been requested as to the sixth count, a different question would have been presented, on account of the phraseology of this count and the breach therein averred, but as the charge included the 5th as well as the 6th count, it was properly refused.

There was no evidence to support the first four counts of the complaint, which counted upon a policy of insurance issued, or upon a verbal contract of insurance. The fifth count shows that plaintiff held a policy of insur-

ance, No. 989, upon a dwelling, situated upon a lot adjoining the lot upon which the building burned was situated. This count further averred that the defendant agreed for an additional premium which was then paid defendant's agent, to extend policy No. 989, so as to cover the additional building, by attaching a slip of paper thereto to that effect, and that plaintiff left his policy 989 with defendant's agent at his request for that purpose. The breach averred is, the refusal and failure to issue the policy with the extension, and the destruction of the house by fire. In this count the building which was to be insured, and which was burned, is described as "a two-roomed, one story frame house," already insured in policy 989. This count did not aver that the building destroyed by fire had been insured, but an agreement by which policy 989 was to be extended so as to cover it. The court, therefore, did not err in refusing the first and third charges requested by the defendant. The charges are not clearly drawn, and were calculated to mislead the jury, as there was some evidence tending to show that a description of the property was left where the agent of the defendant received it. We are not advised as to the character of this description. It may have given the exact distance between the two houses, and yet have described them as adjoining each other. Error must be affirmatively shown.

The relevant and material facts in support of and against the issue upon the fifth count were in direct conflict. The correct conclusion must be determined by the jury. We are constrained to the conclusion that the court erred in the admission of evidence for the plaintiff and to which objections were seasonably made. There was much of mere hearsay admitted, but, according to the abstract, no exceptions were reserved to this character of evidence, and we will not consider it. An illustration of this kind is found in the testimony of witnesses, testifying as to what Henry Going said his father said (the father being the agent of the defendant), he not being present, and so far as we are informed, never heard of such statements. The errrors to which we refer consist in the admission of irrelevant testimony, and acts and statements of Henry Going, who was a mere clerk in the office of the agent of the company, calculated to impress the jury with the conviction that such

acts and statements were binding upon the defendant. The scope and authority of an agent may always be proven, to show whether there is a liability of his principal, but the scope and authority of the clerk of an agent, employed by the agent for his own convenience, and without authority of the principal of the agent, express or implied, is incompetent to fasten a liability upon the principal, who has no knowledge of such acts or statements, or employment. If the rule were otherwise, the clerk of an agent could bind the original principal in matters in which the agent himself had no authority. The principle is well settled in Mechem on Agency, § 197, and quoted with approval by this court in *Waldman v. North British &c. Ins. Co.*, 91 Ala. 170. In several respects the cases are similar. The evidence was conclusive that James A. Going was the agent of the defendant, and that Henry Going was employed by him to do the clerical work of the office. This was admitted by the defendant. The plaintiff himself testified that he knew James A. Going was the agent of the defendant, and that he knew that Henry Going was only a clerk in his office. The introduction of other policies which had been extended, or issued originally by Henry Going, by signing the name of James A. Going, agent, did not show that Henry Going had authority to make such contracts, unless there was evidence to show that the defendant had knowledge or notice of such contracts, and ratified them. If this was shown, the contracts would bind the defendant, upon the principle that the defendant had made Henry Going its own agent to execute contracts for it in that way. The same is true as to receipts offered in evidence which had no connection with this case. All this evidence would be pertinent if there was a question as to the liability of James A. Going, and he was endeavoring to repudiate the authority of his clerk, but the liability here is sought to be fastened upon the defendant, who is the principal of James A. Going. One receipt seems especially irrelevant, the one of date October 29, 1892, for five dollars, on policy No. 568. This receipt was issued at a different time, on a different policy, and to a different person, was made out and signed by James A. Going, in person. That he was the agent of the defendant, had full commission to issue policies, collect premiums, and

bind the defendant, was admitted, and never denied. For the purposes of the case at bar, it was admitted that Henry Going had full authority to collect premiums, give receipts for money, and for this purpose to sign the name of James A. Going. It was never admitted, and, so far as appears from the abstract, there was no legal evidence to show, that Henry Going had authority to bind the company by an insurance contract made by him, in the name of the company, or in the name of James A. Going, agent. To authorize a recovery, the plaintiff must prove a contract with the defendant, as averred in the complaint, made by its agent, and this cannot be shown merely by transactions with and declarations of the clerk of the agent. We must not be understood as intimating that there is not legal evidence in the record that would justify the jury in finding the existence of such a contract. We are of opinion there was, if credited by the jury; but some of the facts indispensable to such finding were controverted, and we prefer not to discuss them, as there must be another trial of the case. The same rule applies to companies and corporations which govern persons, and that is, that whoever undertakes to enforce a contract or claims the benefit of one, whether secured by one having authority or one acting without authority, is bound by the methods and conditions by which it was secured. If secured without authority, or by the use of improper methods, the party for whose benefit it was made, upon notice of these facts, may repudiate it; but if he delays unnecessarily, and holds to its advantages, he must abide its burdens. There was no error in admitting in evidence policy 989, nor in admitting in evidence the three receipts of November 20th, 1893. The plaintiff contends that policy 989 was to be extended to cover the frame building. If the jury should be satisfied of the truth of this contention, the policy would show a contract complete in all its terms, just as if the agreement had been to renew a policy. As for the receipt for five dollars, the plaintiff contends that three dollars of the amount was paid as the premium for the extension, and two dollars was to be credited upon the balance he still owed on the policy, no part of the original premium having been paid. These facts are denied by the defendant. The plaintiff contends that the policy was sent to

the office by direction of James A. Going. This is also denied by the defendant. The truth must be ascertained by the jury.

Reversed and remanded.