# Central of Georgia Railway Company v. Foshee.

*Action against Railroad Company to recover Damages for Killing Plaintiff's Intestate.*

1. *Contributory negligence; duty of person approaching track of railway.*—It is the duty of a person approaching the tracks of a railway for the purpose of crossing it, to stop and look, and if necessary, to listen for approaching trains; and where there is an omission of this duty, followed by injury resulting from a collision with a train or locomotive or car, while attempting to cross over the track, the person so injured and so failing to discharge the duty resting upon him, is, as a matter of law, guilty of contributory negligence which precludes his recovery of damages in an action which counts upon the simple negligence of the railroad company or its employés.

2. *Same; same.*—Where a person approaches a railroad track for the purpose of crossing over it, his duty to stop and look and

125   199
f125  348
125   365

125   199
128   599

125   199
131   279
131   280

125   199
132   429
132   504

125   199
134   267
134   292
134   301

125   199
135   541

125   199
e136  526
136   584
137   241

125   199
e139  589

125   199
e141  231
141   329
141   331
141   619
142   684

125   199
143   138
143   367

125   199
144   322
144   342

[Central of Georgia Railway Co. v. Foshee.]

listen must be performed while the person is so near to the track and so immediately preceding his effort to cross over the track, as to remove any danger from a train coming upon the crossing between the time he stopped, looked and listened and his attempt to proceed across the track; and though he stopped at the track, if he lingers there after looking and listening until a train not in hearing when he stopped, looked and listened, has, in the mean time, come upon the scene and collides with him when he does attempt to cross, he is guilty of contributory negligence.

3. *Same; same.*—Where one who is about to cross over a railroad track sees a train approaching and misjudges its speed or is unable to cross before the train reaches the point of crossing, but makes the attempt and is stricken and injured, he is guilty of negligence which precludes his recovery for any negligence on the part of the railroad company or its employes, unless its agents were wanting in due care to conserve the safety of such person after they became aware of his peril.

4. *Same; same.*—Where a person, while not occupying a position of peril, seeks to cross a railroad track in front of an approaching train and is guilty of negligence by reason of his failure to stop and look and listen before proceeding across the track, or by reason of his misjudging the speed or his ability to cross before the train reaches the crossing, he is not relieved from the imputation of negligence by the fact that the attending circumstances may have caused him to become bewildered and confused, and that, therefore, being panic stricken, he pursued what he thought was his only means of escape.

5. *Action against railroad company for negligence; sufficiency of complaint.*—In an action against a railroad company by an administrator to recover damages for the alleged negligent killing of the plaintiff's intestate, where the complaint alleges that the plaintiff's intestate was killed by being run over by a train of cars owned and operated by the defendant at a public street crossing, within the limits of an incorporated town, the further averment that the defendant's agents and servants, while engaged in running said engine and train "so negligently and carelessly conducted themselves in and about the management of said engine and train of cars that the said engine was caused to run against plaintiff's intestate * * * thereby causing the death of said" decedent, is sufficiently broad to cover the negligence of the engineer in failing to use all the means at his command, after discovering the .peril of the intestate, to avert the accident; and such complaint is not demurrable.

Vol. 155.

[Central of Georgia Railway Co. v. Foshee.]

6. *Contributory negligence; when recovery can be had notwith-
standing proof thereof.*—In an action by an administrator for
the death of his intestate caused by negligence, if it is made
to appear that the deceased was guilty of contributory negli-
gence, there may be a recovery notwithstanding such negli-
gence, if it further appears that the defendant, after becoming
aware of the intestate's peril in time to avoid inflicting injury
on him by the proper use of preventive means at his com-
mand, yet, inadvertently or negligently failed to resort to such
means.

7. *Amendment of complaint; action to recover for personal injuries.*
So long as counts added by amendment set up the same gen-
eral transactions or occurrences upon which the original com-
plaint relies for recovery, they do not introduce an entirely,
new cause of action and are not objectionable; and, therefore,
in an action to recover damages for personal injuries, where
the complaint charges simple negligence only, a count may be
added charging willfulness or wantonness on the part of the
defendant, where it relates to the same occurrences relied upon
in the original complaint.

8. *Same; same.*—In such an action, where a count of the complaint
charges wantonness or willfulness on the part of the defend-
ant's employes, and in the succeeding clause of said count
there are set out facts constituting wanton or willful conduct
from which facts it is evident that the acts of the defendant's
employes complained of amounted to no more than simple neg-
ligence, such count is demurrable for repugnance and incon-
sistency.

9. *Action by administrator to recover damages for negligent killing
of his intestate; sufficiency of complaint.*—In an action
against a railroad company by an administrator to recover
damages for the alleged negligent killing of his intestate,
where a count of the complaint alleges that the defendant's em-
ployes recklessly and negligently ran the train, while ap-
proaching the crossing where the killing occurred, at such a
high rate of speed that they could not stop the train before
reaching the crossing, after they had reached a point of view
two hundred yards away, from which they could see a person
on the track at the crossing, and that the use of such crossing
was so general that it was probable that some person would be
on it at the time the train reached the point where it could be
seen, such count does not charge wantonness against the de-
fendant's employés, and failing to aver that the train men
were aware of the frequent use of the crossing, is insufficient
as a charge of willfulness in respect of the person exposed to
danger at such crossing.

APPEAL from the City Court of Birmingham.

Tried before the Hon. W. W. WILKERSON.

This was an action brought by the appellees as administrators of the estate of Mary Auther, deceased; against the appellant to recover damages for the alleged negligent killing of plaintiff's intestate.

The complaint as originally filed contained five counts. It was subsequently amended by the addition of three other counts. The 4th and 7th counts were stricken on motion of the plaintiff. The 1st count of the amended complaint was as follows: "First Count. The plaintiffs claim of the defendant twenty thousand dollars damages, for that the defendant owned and operated a railroad from Columbus, in the State of Georgia, to Birmingham in the State of Alabama, upon and over which defendant ran engines and trains of cars propelled by steam, for the transportation of passengers and freight for hire; that on, to wit, the 15th day of December, 1897, plaintiff's intestate was lawfully crossing said railroad, at a public street crossing w'thin the limits of the town of Goodwater, in Coosa county, Alabama, a station on defendant's said railroad, and defendant's agents and servants, while engaged in running an engine, to which was attached a train of cars, upon and over said railroad between Birmingham, Alabama, and Columbus, Georgia, so negligently and carelessly conducted themselves in and about the management of said engine and train of cars that the said engine was caused to run against plaintiffs' intestate, Mary Arthur, at said public street crossing, thereby causing the death of the said Mary Auther."

The other averments of negligence as contained in the respective counts of the amended complaint were as follows:

2. "Defendant's agents and servants, while running an engine to which was attached a train of cars upon and over said railroad between Birmingham, Alabama, and Columbus, Georgia, negligently and carelessly, failed to blow the whistle or to ring the bell at least one-fourth of a mile before reaching said public street crossing in the town of Goodwater, Alabama, and to continue to blow the whistle or to ring the bell at short intervals, until

said engine and train of cars passed such crossing and by reason of such failure the said engine and train of cars were caused to run against plaintiff's intestate, the said Mary Auther, at the said street crossing in the said town of Goodwater, thereby causing her death."

3. "Defendant's agents and servants, while engaged in running an engine and train of cars, upon and over said railroad between Birmingham, Alabama, and Columbus, Georgia, negligently and carelessly caused an engine and train of cars to approach and cross said public street crossing in the town of Goodwater, Alabama, where a foot passenger walking along said street and across said railroad track, or an obstruction at the said crossing could not be seen by the engineer or other person or persons, agents and servants of defendant operating and managing said engine and train of cars for a distance of two hundred yards before arriving at said street crossing, owing to a cut through which said railroad passed on a curve; the street crossed said railroad track at the southern or southeastern end of said cut and within the limits of the said town of Goodwater; and on said 15th day of December, 1897, said engine and train of cars was caused to run in a southeastern direction, going from Birmingham, Alabama, to Columbus, Georgia, at such a high rate of speed that the engine and train of cars could not be so managed by such agents and servants of the defendant after they had arrived within a distance from which they could have discovered a person or an obstruction on the track at the said crossing as to prevent an accident in the event a person or an obstruction was at the said crossing, and said engine and train of cars so operated, run, and managed as aforesaid, ran against plaintiffs' intestate at the street crossing aforesaid, on the 15th day of December, 1897, thereby causing her death."

5. "That while the plaintiffs' intestate, said Mary Auther, was crossing the track of defendant's said railroad, at a public street crossing within the limits of the town of Goodwater, Alabama, which is a populous town of over five hundred inhabitants, and a station on said railroad, an engine and train of cars going from the di-

rection of Birmingham, Alabama, in the direction of Columbus, Georgia, which is a southeastern direction, operated and managed by the servants and agents of the defendant, ran against her, the said Mary Auther, thereby causing her death; that said street crossed defendant's railroad track at the southern or southeastern end of a deep cut through which the defendant's said railroad track passed on a curve, and the sides of said cut and the elevation through which it was made so obstructed the view of the agents and servants of defendant when running an engine and a train of cars in the direction of Columbus, Georgia, that they could not see a person or an obstruction at the street crossing, where the engine ran against the said Mary Auther causing her death as aforesaid, in the event a person or an obstruction was there, until they arrived within two hundred yards of said crossing. That on said 15th day of December, 1897, the defendant's agents and servants well knowing of the street crossing and that it was a main thoroughfare in a populous town and that people there crossed the railroad track of defendant frequently every day, and that some person would probably be crossing said track at said time and place, and being wholly indifferent to the consequences of their acts and conduct, recklessly and wantonly propelled said engine and train of cars there along going in the direction of Columbus, Georgia, neglecting to give necessary signals sufficient to warn persons of the approach of said train, and at such rapid speed that said engine and train of cars could not be checked or stopped after the agents and servants of defendant operating and managing the same were near enough to discover a person or an obstruction on the railroad track at said street crossing, in the event a person or an obstruction was there, in time to prevent an accident at the crossing, thereby greatly and unnecessarily endangering the lives of persons who would probably be crossing said railroad track at said place, which acts and conduct of the defendant's agents and servants caused the said engine to run against the said Mary Auther at said street crossing on said 15th day of December, 1897, causing her death, as aforesaid."

6. "That on, to wit, the 15th day of December, 1897, the defendant's agents and servants, while engaged in running an engine, to which was attached a train of cars, upon and over said railroad between Birmingham, Alabama, and Columbus, Georgia, recklessly and wantonly, or intentionally ran said engine and train of cars against plaintiffs' intestate, Mary Auther, at a street crossing within the limits of the town of Goodwater in Coosa county, Alabama, a station on defendant's said railroad, thereby causing the death of said Mary Auther."

8. "That on, to wit, the 15th day of December, 1897, plaintiffs' intestate was lawfully crossing said railway at a public street crossing within the limits of the town of Goodwater, Alabama, a station on defendant's said railroad, and the defendant's agents and servants while running an engine and train of cars, upon and over said railroad between Birmingham, Alabama, and Columbus, Georgia, negligently and carelessly, ran said engine and train of cars at a greater rate of speed than six miles per hour within the corporate limits of the said town of Goodwater, Alabama, which said town is incorporated under the laws of Alabama, and in violation of an ordinance of said town of Goodwater, in the words and figures as follows: 'Sec. 69. Be it further ordained and enacted that it shall be unlawful for trains to run at a greater rate of speed than six miles per hour within the incorporate limits of the town of Goodwater, Ala., and any engineer or conductor who shall cause any engine or train to run at a greater rate of speed than six miles an hour within the corporate limits of said town shall be guilty of a misdemeanor, and on conviction thereof shall be fined not less than five nor more than twenty-five dollars.' And by reason of such negligence and carelessness the said engine and train of cars were caused to run against plaintiffs' intestate, the said Mary Auther, at said public street crossing in said town of Goodwater, thereby causing her death."

To the first count of the complaint the defendant demurred upon the following grounds: 1. It is not shown how or in what manner the defendant owed the plaintiffs' intestate any duty which it neglected or violated.

2. Because it is not shown how or in what manner the alleged negligence caused or contributed to the injury complained of. 3. It is not shown in said count that the street crossing was such a road-crossing as is embraced in the statute. There were demurrers interposed to the 2d and 3d counts, but it is unnecessary to set them out.

To the 5th count as amended, the defendant demurred upon the following grounds: 1. Because said count seeks to recover of this defendant for its alleged wanton and recklessly negligent conduct, and fails to allege or show any facts constituting wanton or recklessly negligent conduct. 2. Because said count is repugnant and inconsistent in this: in one portion it charges this defendant with the omission of statutory duties in running said train at a reckless, unwarranted and dangerous rate of speed which constitutes but simple negligence and yet in another portion of said count the plaintiffs denominate said omissions of duty and rate of speed wantonness or willfulness. 3. That said count sets up a new and independent cause of action. 4. That said count is a departure from the original cause of action.

To the 6th count the defendants demurred upon the ground that said count set up a new and independent cause of action and was a departure from the original cause of action. All of the demurrers were overruled, and to the ruling of the court in so overruling the demurrers the defendant duly and separately excepted.

The defendant filed the plea of the general issue and several special pleas setting up contributory negligence on the part of the plaintiffs' intestate. The plaintiffs moved to strike from the file the special pleas as pleas to counts numbered 5 and 6, and this motion was sustained. To this ruling the defendant duly excepted.

The facts of the case necessary to an understanding of the decision on the present appeal are sufficiently stated in the opinion.

The court at the request of the plaintiffs gave to the jury the following written charges: (4.) "If the jury believe from the evidence that the agents and servants of defendant recklessly and wantonly ran an engine and train of cars against Mary Auther at a public street

crossing in the town of Goodwater, Alabama, and killed her, the defendant is liable in this action whether Mary Auther was guilty of contributory negligence or not." (5.) "The undisputed evidence in this case shows that the defendant's agents were guilty of negligence in the management of the train which struck and killed Mary Auther, and if this negligence was the sole cause of her death, the jury should return a verdict in favor of the plaintiff." (6.) "To establish the pleas of contributory negligence the defendant must show by the weight of the evidence that Mary Auther failed to exercise reasonable care in the attempt to cross defendant's railroad track." To the giving of these charges the defendant separately excepted, and also separately excepted to the court's refusal to give, among others, the following written charges requested by it: (4.) "If you believe the evidence, you will find for the defendant on the 1st count." (5.) "If you believe the evidence, you will find for the defendant on the 2d count." (6.) "If you believe the evidence, you will find for the defendant on the 3d count." (7.) "If you believe the evidence, you will find for the defendant on the 5th count." (8.) "If you believe the evidence, you will find for the defendant on the 6th count." (9.) "If you believe the evidence, you will find for the defendant on the 8th count." (20.) "I charge you, gentlemen of the jury, as a matter of law, that Mrs. Auther was guilty of contributory negligence, which prevents her administrator recovering on these counts of the complaint charging simple negligence." (24.) "I charge you that under the laws of this State a person can not be punished for the willfulness, wantonness or maliciousness of his agent or servants if he neither authorizes, sanctions such willfulness, wantonness or maliciousness nor ratified or approved it; and the same rule applies to corporations as to individuals whether the agent or servant who has been willful or wanton is an inferior agent or servant or not." (37.) "I charge you that the failure of the engineer to ring the bell, if you find that he did fail to ring the bell, would not under the evidence in this case, be willful, wanton or reckless negligence." (38.) "If the jury believe all the evidence, they will find

that the engineer was not guilty of any willful or wanton negligence." (54.) "I charge you that the plaintiffs intestate was guilty of negligence in attempting to cross in front of the train and would defeat plaintiffs' right to recover on all the counts in the complaint, charging simple negligence only." (55.) "If from the evidence in this cause your minds should be equally balanced as to whether or not the natural and probable consequences of the defendant's train being run in the manner in which it was, would be to inflict injury to person or property at the crossing where the injury occurred, then you must find for the defendant." (57.) "I charge you that it was the duty of plaintiffs' intestate, Mary Auther, to stop, look and listen when she got near enough to the crossing where the injury occurred to see defendant's train, and if she failed to stop at such point she was guilty of negligence contributing proximately to the cause of her injury, and if she looked and saw the train, and undertook to cross in front of it, she was guilty of negligence contributing proximately to the cause of her injury, and the plaintiffs in this cause could not recover unless you further find from the evidence that the natural and probable consequences of the defendant's running the train in the manner in which it was run was to inflict injury to some person or property at the crossing where the injury occurred."

There were verdict and judgment for the plaintiffs, assessing their damages at $5,000. From this judgment the defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

JOHN LONDON, for appellant.—Adding counts charging willfulness or wantonness to a complaint charging simple negligence is the introduction of an entirely new cause of action.—*Mahan v. Smitherman,* 71 Ala. 563-567; *A. G. S. R. R. v. Smith,* 81 Ala. 229; *Semple v. Glenn,* 91 Ala. 257; *A. G. S. R. R. Co. v. Hall,* 105 Ala. 605; *George v. M. & O. R. R.,* 109 Ala. 245; *Davis v. Miller,* 109 Ala. 589; 1 Ency. Plead. & Prac. 556.

[Central of Georgia Railway Co. v. Foshee.]

A person approaching a railroad crossing is required to look and listen, and failure to do so is contributory negligence, as matter of law, and defeats an action founded on simple negligence.—*L. & N. R. R. v. Webb* 90 Ala. 185, 190-197; *G. P. R. R. v. Lee*, 92 Ala. 262, 267; *L. & N. R. R. v. Richards*, 100 Ala. 365; *H. A. & B. R. R. v. Fennell*, 111 Ala. 356; *M. & O. R. R. Co. v. Roberts*, (Miss.) 23 So. Rep. 393; *L. & N. R. R. v. Crawford*, 89 Ala. 240.

A person who undertakes to cross the track of a railroad in front of a train which he sees approaching, measuring the distance and time for himself, assumes the risk, and cannot recover for an injury the result of mere negligence.—*Gothard v. Railroad Co.*, 67 Ala. 114; *Railroad Co. v. Sampson*, 91 Ala. 564; *Glass v. Railroad Co.* 94 Ala. 590; *R. R. Co. v. Houston*, 95 U. S. 697; *Schofield v. R. R. Co.* 114 U. S. 614; *R. R. Co. v. Fennell*, 111 Ala. 356.

Plaintiff's intestate having been in a position to see an approaching train her failure to look defeats the action. *Nave v. A. G. S. R. R.*, 96 Ala. 264; *H. A. & B. R. R. v. Fennell*, 111 Ala. 356; *So. Ry. Co. v. Smith*, 86 Fed. Rep. 292.

When contributory negligence is plainly shown, and there is no evidence of willful or wanton negligence, there is nothing to submit to the jury.—*St. L. R. R. v. Schumacher*, 152 U. S. 77; *R. R. v. Houston*, 95 U. S. 697; *L. & N. R. R. v. Richards*, 100 Ala. 365; *McAdory, Admr. v. L. & N. R. R.*, 109 Ala. 636; *Pannell v. Nashville, etc. R. R.*, 97 Ala. 298; *H. A. & B. R. R. v. Fennell*, 111 Ala. 356.

To constitute willful injury, there must be design, purpose and intent to do wrong and inflict injury, and to constitute wantonness there must be a course of conduct pursued, which the party, from his knowledge of existing circumstances, knows will likely or probably result in injury.—*B'gham Ry. & E. Co. v. Bowers*, 110 Ala. 328; *M. & C. Ry. v. Martin*, 23 So. Rep. 231; *Haley v. K. C. M. & B. R. R.*, 113 Ala. 640; *A. G. S. R. R. v. Burgess*, 114 Ala. 587; *L. & N. R. R. v. Anchors*, 114 Ala. 492; *H. A. & B. R. R. v. Swope*, 115 Ala., 287; *Burson v. L. & N. R.*

14

R., 22 So. Rep. 457; *Anniston Pipe Works v. Dickey*, 93 Ala. 418, 420.

Wantonness or recklessness on the part of plaintiff's intestate defeats an action counting on wantonness.— *G. P. R. R. v. Lee*, 92 Ala. 272; *Stringer v. Ala. Mid. R. R.*, 99 Ala. 410.

Running a train at a rate of speed prohibited by ordinance, and the failure to ring the bell or blow the whistle is not more than simple negligence.—*H. A. & B. R. R. v. Maddox*, 100 Ala. 620.

Charges must be given as requested in writing, and it is error to refuse a proper charge, although substantially enunciated in another charge given.—*Polly v. McCall*, 37 Ala. 20, 31; *E. T. V. & G. R. R. v. Bayliss*, 77 Ala. 436; *McGehee v. The State*, 52 Ala. 224; *Carson v. The State*, 50 Ala. 134, 138.

SMITH & SMITH and LEWIS E. PARSONS, *contra*. The complaint as amended and each count thereof, under the many decisions of this court, is sufficient, and not subject to the demurrers interposed.—*Ensley Ry. Co. v. Chewning*, 93 Ala. 24; 9 So. Rep. 456; *W. Ry. v. Lazarus*, 88 Ala. 453; *L. & N. R. R. Co. v. Markee*, 103 Ala. 160; 15 So. Rep. 511. The fifth count as amended is good; it avers every fact necessary to constitute reckless and wanton wrong, causing death.—*M. & C. R. R. Co. v. Martin*, 23 So. Rep. 231. Objection was made by the defendant to the filing of the amended complaint, upon the ground, that the complaint originally was for simple negligence, and the amendment by adding the sixth count for reckless and wanton wrongful acts and conduct causing death, introduced an entirely new cause of action; also, that it introduced an action of a different form—an action of trespass when the original was in case,. These objections are untenable.—*Highland Ave. &c. Co. v. Sampson*, 112 Ala. 434; 20 So. Rep. 569; *Mohr v. Lemle*, 69 Ala. 180.

Upon plaintiff's motion, all pleas of contributory negligence, in so far as they purported to answer the fifth and sixth counts of the complaint, were stricken, upon the ground that the only proper pleas to said counts,

were pleas of the general issue. As authorities on this point the appellees rely on the cases of *L. & N. R. R. Co. v. Markee,* 103 Ala. 160; 15 So. Rep. 511; and *M. & C. R. R. Co. v. Martin,* 23 So. Rep. 231.

Where the court has given instructions to the jury which are correct and cover the case, the refusal of the court to repeat them in other language is not error.— *Marchand v. Griffin,* 140 U. S. 510. A court will not be in error for refusing charges which are mere repetitions of charges which have been given, and a mere variation in the use of words, which "hideth counsel" and which in no way change the meaning or assert different principles from those given will not affect the rule.—*L. & N. R. R. Co. v. Hurt,* 101 Ala. 34; 13 So. Rep. 130; *Miller v. The State,* 110 Ala. 69; 20 So. Rep. 392. Especially is this true since the amendment of the section of the Code construed in the Hurt case.—*L. & N. R. R. Co. v. Cowherd,* 23 So. Rep. 793.

Under the evidence in this case it was a question for the jury whether plaintiffs' intestate exercised due care. The following authorities fully sustain the action of the trial court in leaving the question to the jury under proper instructions.—*Huffmeister v. Pa. R. R. Co.,* 160 Pa. 568; 28 Alt. 495; *Cleveland C. C. & I. R. R. Co. v. Harrington,* 49 Am. & Eng. R. R. cases (Ind.) 358; *B. & O. R. R. Co. v. Owings,* 65 Md. 502; 28 Am. & Eng. R. R. Cases, 169. All the above are directly in point and are well considered. See also, *Stringer v. Ala. Min. R. R. Co.,* 99 Ala. 397; 13 So. Rep. 75; *Greany v. Long I. R. R. Co.,* 101 N. Y. 419; *Parsons v. R. R. Co.,* 113 N. Y. 355; *McNamara v. N. Y. C. R. R. Co.,* 136 N. Y. 650; *Hanks v. B. & A. R. R. Co.,* 147 Mass. 495; *Grand Trunk R. R. Co. v. Ives,* 144 U. S. 408; *Jones v. E. T. V. & G. R. R. Co.,* 128 U. S. 443; *B. & O. R. R. Co. v. Griffith,* 159 U. S. 603; *Guggenheimer v. L. S. R. R. Co.,* 33 N. W. (Mich.) 161; *Lake Shore v. Franz,* 39 Am. & Eng. R. R. Cases (Pa.) 629; *Ely v. Pittsburg Ry. Co.,* 158 Pa. 233; 27 Alt. 970; *McGill v. Pittsburg R. R. Co.,* 152 Pa. 331; 25 Alt. 540.

The erroneous action of the deceased, peril suddenly

coming upon her through defendants negligence, will not be considered negligence, as matter of law, on her part.—*Huffmeister v. Penn. R. R. Co.*, 160 Pa. 568; 28 Alt. 495; *Woodward Iron Co. v. Andrews*, 114 Ala. 243; 21 So. Rep. 440; *R. & D. R. R. Co. v. Farmer*, 97 Ala. 141; 12 So. Rep. 86; *Cook v. Central R. R. of Ga.*, 67 Ga. 540-41; *L. & N. R. R. Co. v. Thornton*, 23 So. (Ala.) 778; *Folsom v. Concord R. R. Co.*, 38 Alt. (N. H.) 209; 7 Am. & Eng. Ency. 399, 400 (New ed.); Whitaker's Smith on Negligence 392; 3 Mack & Rapalje's Dig. R. R. Cases 267-8; *Postal Tel. Cable Co. v. Hulsey*, 22 So. Rep. 854.

The court did not err in refusing charges which were requested by the defendant. Such charges as were refused were open to many objections.—*L. & N. R. R. Co. v. Hurt*, 13 So. (Ala.) 130; *L. & N. R. R. Co. v. Thornton*, 23 So. (Ala.) 778; *Woodward Iron Co. v. Andrews*, 114 Ala. 243; 21 So. Rep. 440; *R. & D. R. R. Co. v. Farmer*, 97 Ala. 141; 12 So. Rep. 86; *Cook v. Central R. R. of Ga.*, 67 Ala. 540-1; *L. & N. R. R. Co. v. Thornton*, 23 So. Rep. (Ala.) 778.

Whether the previous negligence of the defendant, which lulled the deceased into a sense of security in walking upon the side track, was the proximate cause of her death was a question for the jury.—*Cook v. Parham*, 24 Ala. 21; *Western R. R. Co. v. Sistrunk*, 85 Ala. 357-8; *L. & N. R. R. Co. v. Cochran*, 105 Ala. 354; 16 So. Rep. 797; *The S. M. v. Wiley*, 153 U. S. 64; *Norton v. Eastern R. Co.*, 113 Mass. 366; *Prescott v. Eastern R. Co.*, 113 Mass. 370.

McCLELLAN, C. J.—That it is the duty of a person approaching the track of a railway for the purpose of crossing it to stop, and to look, and to listen if need be, that is if the exercise of the sense of sight does not suffice to fully disclose the situation for approaching trains, and that the omission of this duty followed by injury in collision with a train, locomotive, or car while attempting thus heedlessly to cross over the track, is as matter of law negligence on the part of the traveler so contributing to the result as to defeat his action counting on the injury as having been produced by the simple negligence

[Central of Georgia Railway Co. v. Foshee.]

of the railway company or its employés, are propositions of such universal acceptance, of such frequent declaration by this court and of such obvious soundness that we shall neither discuss them nor cite authorities in support of them.

It is equally clear on principle and authority that this duty must be performed at such time and place with reference to the particular situation in each case as will enable the traveler to accomplish the purpose the law has in view in its imposition upon him. He must stop so near to the track and his survey by sight and sound must so immediately precede his effort to cross over it as to preclude the injection of an element of danger from approaching trains into the situation between the time he stopped, looked and listened and his attempt to proceed across the track. If he stops so far from the railway as that a train which could not be seen from that point could and does reach the crossing by the time he has traversed the intervening distance, and gotten on the track, he negligently contributes to the resulting collision and injury. And the same is true if, though he stop at the track, he lingers there after looking and listening and delays crossing until a train not in sight or hearing when he stopped, looked and listened has come meantime upon the scene and collides with him when he does attempt to cross.

It is also thoroughly well settled that if such traveler sees a train approaching, misjudges its speed, or, for any reason, his own ability to cross before it reaches the point of crossing, and makes the attempt and is stricken and injured, he is likewise guilty of negligence, and cannot recover for the negligence of, or imputable to, the company unless its agents were wanting in due care to conserve his safety after they became aware of his peril, that is, either of his presence on the track or his purpose, indicated by his movements, to go upon the track in front of the train.

All the foregoing doctrines have application to this case. Plaintiffs' intestate went upon the track of defendant's railway in front of a rapidly approaching locomotive drawing a train of cars, in an attempt to cross over

the track. She was there stricken by the locomotive and killed. There is evidence from which it might be inferred that she did not see or hear the train, and, without stopping to look and listen at the proper time and place, or at all for that matter, went upon the track in ignorance of its approach. That by stopping and looking and listening she could have ascertained that the train was approaching and was dangerously near is entirely clear on the evidence. Indeed it is not possible to conceive that any foot traveler need or could with the proper use of his senses ever go upon a railway in ignorance of the approach of a train sufficiently near to strike him before he crosses over it. No curve even in a deep cut that a train can be operated upon can be so acute as to deprive him of the opportunity while standing beside the track to refrain from attempting to cross in front of it. On this aspect of the evidence, the intestate was as matter of law unquestionably guilty of negligence in attempting to cross the track without stopping and looking and listening for the train that killed her. There was other evidence in the case to the effect that the intestate did stop and did look before going on the track and did see the train approaching, and that thereupon with full knowledge of its approach she attempted to cross in front of it, and so was run against and killed. If these were the facts she was equally guilty of negligence. It is probable that this last phase of the evidence presents the real facts. But it doesn't matter whether the one or the other phase is the true one. The whole evidence without the slightest conflict shows that she either went upon the track without stopping to look and listen, or that she did stop, and look when the train was in plain view and then went on the track, in an effort to cross it, in front of the nearly and rapidly approaching locomotive and train. And upon either phase of the evidence she was guilty as matter of law of negligence in attempting to cross the track at that time and place.

Nor was she in any degree relieved from the imputation of negligence by other alleged circumstances attending her attempt to cross, which counsel for appellees insist bewildered and confused her to such an extent

that it was open for the jury to find that she acted with all the care required of her in view of the panic under which she labored. There is a doctrine fully approved by this court to the general effect that where the party injured was suddenly placed by the wrong of the defendant in a position of extreme and imminent peril necessitating to his extrication quick decision and action on his part he will not be held to the same correctness of judgment and action as if he had time and opportunity to fully consider the situation and to choose the best means of escaping the peril; or, in other words, adopting a formulation of this principle which has been approved by this court, where by the negligence of the defendant, or those for whom he is responsible, the plaintiff has been suddenly placed in a position of extreme peril, and thereupon does an act which under the circumstances known to him he might reasonably think proper, but which those who have a knowledge of all the facts, and time to consider them, are able to see was not in fact the best, the defendant cannot insist that under the circumstances the plaintiff has been guilty of negligence. "Perfect presence of mind, accurate judgment, and promptitude under all circumstances are not to be expected. You have no right to expect men to be something more than ordinary men."—*Woodward Iron Co. v. Andrews,* 114 Ala. 243, 257-9. But this doctrine can have no application here. The intestate when she started upon the act which cost her her life was not in a position of peril, extreme or otherwise. She was, to the contrary, in an absolutely safe position. And not only was it safe in point of fact, but it was obviously so to the perceptions and comprehension of any ordinary man. Any ordinary man or woman standing as she was by the side of the track and out of the way of the approaching locomotive when she saw the train (and of course if she did not see it this doctrine could not apply in any event) would have known that that was a place of safety and would have had no hesitation or doubt as to the propriety of remaining there. And courts in these matters deal only with ordinary people. That is the sort of man which constitutes the standard by which all men and

women are to be judged on the question of negligence
*vel non.* We "have no right to expect men to be some-
thing more than ordinary men," but must expect them
to be ordinary men, and their actions must in all cases
be adjudged upon the assumption that they are ordinary
men.   The law takes no account of personal idiosyncra-
cies and peculiarities which produce panic without cause
and thus lead to negligent and rash action.   The test
of due care in a given instance is not what the individual
involved in that instance would always do under the
circumstances, but what a man of ordinary care and
prudence would do under the circumstances.   And in
this case, as no man of ordinary care and prudence would
have attempted to rush from a place of safety across the
track in front of this locomotive, the act must be held
negligent and rash on the part of the intestate.   It is of
no consequence that she was panic stricken and hence
thought she was in danger and that that was her only
means of escape.   She must have been in danger—which
she was not—and she must have *reasonably* thought the
course she took was the best—which she could not have
done since there was no ground for so thinking.   These
plaintiffs cannot hold the defendant responsible for the
results of her unwarranted panic.

Plaintiffs' intestate having thus been guilty of negli-
gence in going upon defendant's track, that negligence
is to be held a contributing cause to her death along with
any alleged and proved *antecedent* negligence of the de-
fendant's employés, so as to bar a recovery by the
plaintiffs for such negligence.   There are three counts
in the complaint which charge such antecedent negli-
ence on the part of defendant.   The second count avers
as the cause of the injury the failure of defendant's em-
ployés "to blow the whistle or ring the bell at least one
fourth of a mile before reaching said public street cros-
sing in the town of Goodwater, Alabama, and to continue
to blow the whistle or ring the bell at short intervals
until said engine and train of cars passed such crossing."
The 3d count ascribes the disaster to the negligence of
defendant's employés in running the train at such a
great rate of speed in approaching the crossing as that

they were unable to stop it before reaching the crossing
after they had arrived at a point from which they could
first see an obstruction or person on the track at the cros-
sing. And the eighth count alleges as the cause of intes-
tate's death that the defendant's agents negligently and
wantonly ran the engine and train of cars within the
corporate limits of the town of Goodwater at a greater
rate of speed than six miles per hour in violation of an
ordinance of the municipality limiting the speed of
trains to that rate. There was evidence tending to prove
the negligence laid in each of these counts; but, of course,
the contributory negligence of the intestate was a com-
plete defense to each of them, and that being shown by
the uncontroverted evidence the court should have given
the affirmative charge with the hypothesis which was
requested by the defendant as to each of them. The trial
court erred also in those parts of its general charge which
relate to this matter.

There were demurrers to the 2d and 3d counts, but
as it seems very improbable, to say the least, that those
counts will cut any figure in the case hereafter we deem
it unnecessary to consider the demurrers. For the same
reason we shall pretermit consideration of the validity
and admissibility in evidence as offered of the ordinance
set up in the 8th count.

The first count of the complainant avers that intestate
was killed at a public street crossing in the town of
Goodwater. This averment shows that defendant was
under a duty to keep a lookout for her at the time and
place of the collision and to exercise care in conserva-
tion of her safety. The averment of negligence on the
part of defendant's employés is very general, but, the
duty of care being shown, it is sufficient.—*Armstrong v.
Montgomery St. R'y Co.*, 123 Ala. 233. It is sufficiently
broad to cover the negligence of the engineer in failing
to use all the means at his command after discovering
the peril of the intestate to stop his train before reach-
ing her, or to lessen its speed so as to afford her time and
opportunity to get off the track before the locomotive
reached the point at which she was attempting to cross
it; and this count is to be taken as averring such negli-

gence. If there was such negligence and if it had a causal connection with the result complained of, the negligence of the intestate in going and being upon the track would be no defense to the action: Her negligence would not be the cause of the injury nor contributory thereto, but merely the cause of a condition upon which the negligence of the engineer in failing to use all means in his power to avoid the injury after becoming aware of her peril, operated to and as the sole cause of her death.—*Tanner's Extrs. v. Railroad Co.,* 60 Ala. 621; *Louisville & Nashville Railroad Co. v. Brown,* 121 Ala. 221; *Central of Georgia R'y Co. v. Lamb,* 124 Ala. 172.

We think there was evidence of such negligence on the part of the engineer, and that there was also evidence tending to show that it caused the death of plaintiff's intestate. The engineer saw the peril of the woman in time to put on the emergency air brake and to reverse his engine and to sound the alarm whistle before his engine reached the crossing. He did in fact sound the alarm and put on the emergency air brakes. But he did not reverse his engine. He testified in this connection as follows: "I know of nothing else that could have been done that would have prevented a collision. What I did is regarded as the most effective way of stopping a train; there is nothing to do but apply the emergency brakes; that is all that is possible to do with an air-brake train; we were using the improved, quick action, automatic air brakes. * * * * * * * * * We don't reverse our engine with the present appliances; that is played out." The fireman testified as follows in this connection. "Besides sounding the alarm whistle, the engineer applied the emergency. He did not reverse his engine. I don't think a skillful engineer would reverse his engine under such circumstances. The engines have appliances for reversing them; they can be reversed; you do not stop a train quicker by reversing the engine. It can be used in case your air refuses to work, but the air brake is put there purposely to stop the train with. In some cases when you reverse the engine it turns the wheels backwards, and in others it does not. If you make an application of your air and reverse your engine and the

train moving, any railroad man with any experience will tell you that it will lock the wheels not only of the engine but the train being equipped with air brakes, will lock the wheels and the whole train will slip; when the air brake is applied it does not lock the wheels so as to make them slide, they continue to roll in the same direction; if the air is properly adjudged ( ?) it does not stop any of the wheels from rolling, but if the engine is reversed it stops all the wheels. If you reverse your engine and apply your brakes it will lock the wheels in all instances, and it will slip. If you don't apply the brakes but reverse the engine, in some cases the wheels will slip then; I have known it to turn the wheels back; it does not come to a very short stop then. According to the best of my judgment the shortest way to stop a train is to apply the air." It is, we take it, common knowledge that in the absence of extraneous force the driving wheels of an engine will turn to the front or to the rear as the lever is set forward or backward, and with equal force and power in either direction. If an engine in motion and drawing a train does not on being reversed turn its wheels backward, it is not because the whole force of the machine is not being fully exerted to the rear but because the force of its own and the train's forward momentum is equal to or greater than the power of the engine, and though the driving wheels in such case do not revolve backwards, the full power of the engine is spent against and in reduction of the momentum through the bite they have upon the rails, being stationary with the force of the steam holding them steadily to a backward motion, which they will visibly assume as soon as the momentum is reduced to a point where it will not overcome the bite of the drivers on the rails. Up to this point, if the drivers remain stationary, that is do not revolve backwards, they must of course slide on and along the rails; and the power necessary to push the inert weight of the engine along the rails is taken from the power of the momentum and goes of course to a reduction of the momentum and thus helps to stop the train. If the drivers do revolve backwards though the train continue to move forward, it is because the momentum overcomes the hold

they have on the rails and they slip; but so much of the force of momentum as is expended to overcome the hold of the drivers on the rails is a force exerted in reduction of the momentum and to the stopping of the train. So in any case it would seem to be common knowledge that the reversing of an engine would operate directly and powerfully to overcome its and the cars momentum and to stop the train, and this whether the wheels of the cars be locked or not or heavily clamped by brakes, though not locked or not. At least we may say, as of common knowledge, that as between a train with all the wheels of the cars and engine locked, and one with the wheels of the cars impeded by the brakes, but not locked, and the wheels of the engine revolving freely, the momentum of the former would be much more quickly overcome and its speed much more readily reduced; or, in other words, that a train in motion will be sent further and faster on wheels which, though some of them are impeded by the brakes, continue to revolve than on wheels all of which are locked and rigid. This is but another way of saying that a train can be rolled along its track easier and faster and further than it can be slided on its rails; and if this were not so, we suppose railway companies would be quick to discard wheels and provide skates. The fireman, as we have seen, testified that the application of the air brakes impeded the wheels of the cars, but did not stop their revolutions, but that if the engine was reversed at the same time, the effect was to lock all the wheels on the cars and on the engine and sometimes even to cause the driving wheels of the engine to revolve backwards. On this testimony, taken in connection with the other testimony of this witness and the testimony of the engineer, set out above, it was at least a question for the jury whether the engineer was not guilty of negligence in failing to reverse his engine after he became aware of intestate's peril; and it may be that it could be declared by the court as a matter of common knowledge that the effect of reversing the engine of a train in motion is to impede its progress, overcome its momentum, reduce its speed and bring it to a standstill. Certain it

is that in all our experience in dealing with hundreds of similar cases, it has never before been suggested that reversing the engine is not an approved and powerful means of stopping, or reducing the speed of trains; and it is so recognized by the statute law of the State.—Code, § 3440. We do not know whether this train could have been stopped by reversing the engine before it reached the crossing or not. Probably not. But that its speed could have by that additional means been reduced further than it was by the application of the brakes, there was room for the jury to find; and if it had been further reduced to the extent of delaying its approach to the crossing only a second or two, it is a fair conclusion from the evidence that the intestate would have escaped, since the proof is that she was in the very act of clearing the track on the other side from her entry upon it when she was stricken. On this state of case the court properly refused to give the affirmative charge for defendant on the first count and to give other charges to the effect that the negligence of the intestate was a defense to all the counts of the complaint except those charging willfulness or wantonness on the part of defendant's employes.

Count five of the original complaint was intended to charge that the defendant's employes wantonly killed Mrs. Arthur, plaintiffs' intestate. It was and is insisted for the defendant that it charged only negligence. We will assume that this contention of defendant was tenable, and that said count did not charge wantonness or willfulness. This was the only count in the original complaint in which any attempt to aver wantonness or willfulness was made. So that we are assuming that the original complaint counted on mere negligence only. Count five was afterwards amended and as amended it was held to be a good count for wantonness by the trial court. And the 6th count was added by amendment, and that confessedly is a good count for wantonness or willfulness. Defendant objected to these amendment on the ground that they introduced an entirely new cause of action. It was said by Justice COLEMAN, in *Louisville*

& *Nashville Railroad Co. v. Markee,* 103 Ala. 160, 171, that "a declaration or complaint may in one count aver simple negligence, in another willful and intentional wrong; * * * or, if the complaint charged either the one or the other, and the proof was such as to require an amendment of the pleadings this should be allowed;" or, in other words that to a complaint charging simple negligence only a count may be added charging willfulness or wantonness, or *vice versa.* It is said that this was a *dictum* in that case and should not be followed. Whether *dictum* or not it is a sound statement of the law, and must be followed. An amendment to be objectionable on the ground relied upon by appellant must introduce an entirely new cause of action. An entirely new cause of action is not introduced by an amendment which counts upon the same transaction as that counted upon in the original complaint. It is on this principle that the common counts may be added to a complaint on a promissory note unless they are intended to bring forward a different and distinct obligation to pay.—*Mahan v. Smitherman,* 71 Ala. 563. On the other hand, when the original complaint contains the common count on an account stated, and also claims the same amount as due by verified itemized account, etc. and the verified account offered in evidence contains charges on account of these promissory notes made to plaintiff by defendant, a count on the notes may be added by amendment.—*Oden v. Bonner,* 93 Ala. 393. So a declaration in trover may be amended by adding counts in case, the damages sought to be recovered under each count being for the loss to plaintiff of the same property.—*Elmore v. Simon & Bro.,* 67 Ala. 526. And a complaint on a written policy of insurance may be amended by adding a count on a verbal contract to insure it, etc., both the alleged policy and the alleged verbal contract relating to the same risk.—*Insurance Co. v. DeJarnett,* 111 Ala. 248. To a declaration in trespass against the sheriff and the sureties on his official

[Central of Georgia Railway Co. v. Foshee.]

bond alleging a wrongful levy on plaintiff's property un-
der color of office, an amendment may be added setting
out the bond and alleging its breach by the wrongful
levy.—*Albright v. Mills,* 86 Ala. 324. So to a declara-
tion against a railroad company for personal injuries
alleging "that defendant's train threw a cow from the
track and against plaintiff, whereby plaintiff was greatly
injured," and that this was caused by the failure of the
engineer to blow the whistle or ring the bell at short in-
tervals while running within the limits of a town, and his
failure to use all means in his power to stop the train, an
amendment may be added alleging that the train was
running at a reckless and unusual rate of speed and that
the engineer failed to keep a lookout for obstructions on
the track, whereby the injury was caused.—*A. G. S. R.
R. Co. v. Chapman,* 83 Ala. 453. And it has been held
(though we do not intend to here fully endorse the rul-
ing) that where, in an action for libel, the libel declared
on in the original complaint relates only to plaintiff's
*solvency,* an amendment may be allowed under the
statute introducing another and distinct libel written
and published at a different time, and touching the *integ-
rity and personal conduct* of the plaintiff, without ques-
tioning his solvency, this court by BRICKELL, C. J., say-
ing: "The amended complaint, by proper averments, in-
troduces the libel given in evidence, purporting to have
been written and published at a different time from the
writing and publication of the libel described in the ori-
ginal complaint; and the matter of it concerns
and *touches the integrity and the conduct of
the plaintiff,* without assailing or questioning his
solvency. In the leading case of *Crimm v.
Crawford* (29 Ala. 626), construing the present
statute of amendments, it was said: 'Under these
statutes, we think there is no limit to the power of
amending the allegations of a complaint, except that a
party should not be allowed to depart in the complaint
entirely from the process, or to substitute an entirely
new cause of action, or to make an entire change of par-
ties. Either of these things would be tantamount to the
institution of a new suit, and would not be an amend-

[Central of Georgia Railway Co. v. Foshee.]

ment of the old cause of action.' This construction of the statute has since been observed; and following it, the amended complaint, though introducing a libel different in substance, not of equivalent import or meaning with that averred in the original complaint, was properly allowed. The form of action is not changed, a cause of action *entirely new* is not introduced. A libel of the plaintiff, in his trade and business as a merchant, written and published before the commencement of suit, addressed to the same parties, is the cause of action averred in both complaints. The substance of the allegations is, however, changed; new matter is introduced, forming a new and independent cause of action, which was not before the subject of pending suit, and of contestation between the parties. The allegations of the complaint are not simply varied to meet the phases in which the evidence may present the matter already in issue, so that there will be a correspondence between allegations and proof; but a libel, essentially distinct and different, in all its parts and tendencies, from that described in the original complaint, is, for the first time, introduced by the amended complaint. While the cause of action remains a libel, written and published of and concerning the plaintiff, *touching* his character and credit as a merchant, there is a total departure from the subject of the libel as averred in the original complaint." *Mohr v. Lemle,* 69 Ala. 180. It has also been several times ruled by this court that where the original complaint states no cause of action, an amended complaint stating a cause of action may be filed, (*Simpson v. M. & C. R. R. Co.,* 66 Ala. 85; *Louisville & Nashville Railroad Co. v. Wood,* 105 Ala. 561), and upon this ruling it would seem that, other considerations aside, the counts for wantonness and willfulness were properly allowed because an *attempt* was made in the original 5th count to aver wantonness and willfulness. Where the original complaint is founded on the sheriff's official bond, and assigns as a breach the non-payment of a decree rendered against him as administrator by virtue of his office; an amendment by adding a count on the decree only with-

[Central of Georgia Railway Co. v. Foshee.]

out any reference to the bond, does not introduce a new cause of action.—*Stringer v. Waters,* 63 Ala. 361. To a declaration a note made by an executrix as such, a count may be added alleging an indebtedness of the testator in his lifetime, and thereupon the original count may be stricken.—*Taylor v. Perry,* 48 Ala. 240; *Burch v. Taylor,* 32 Ala. 26. These authorities serve to fully support the proposition with which we began this discussion, viz.: that so long as counts added by amendment set up the same general transactions or occurrences upon which the original complaint relied for recovery they do not introduce an entirely new cause of action and are not objectionable though the form of action may be changed by them as from trover to case, or *vice versa,* or from case to trespass, etc., etc.; and they further serve to differentiate the rule of amendments prescribed by the statute as construed by this court from the rule against departures in after pleading from the case made by the complaint. It is no objection to an amendment that it works a departure from the original complaint within the meaning of the rule last referred to. The amendments under consideration in most of the cases referred to would have been vicious departures in pleading if the facts they introduced had been *replied* to a plea to the original complaint, as, for instance, where the original complaint was upon a note and to a plea of *non est factum* the plaintiff had replied an assumpsit for work and labor, there would have been a clear departure from the original complaint, but it is undoubtedly the law that such assumpsit may be added by amendment to the complaint in a separate count. And so it is no argument against the right to add to a count for negligence counts for willfulness or wantonnes, that willfulness or wantonness could not be replied to a plea of contributory negligence to a complaint charging negligence only. That the counts added in this case intended to charge willfulness or wantonness relate to the same occurrences in respect of which the original complaint charged negligence is entirely clear upon the face of the several counts, and that they were properly allowed as amendments to the original complaint we have no sort of doubt.

The gist of the amended 5th count is that defendant's employes recklessly and wantonly ran the train while approaching the crossing at such a high rate of speed that they could not stop it before reaching the crossing after they had attained a point of view two hundred yards away from which they could see a person on the track at the crossing if a person were there and that the user of the crossing was such that it was probable some person would be on it at the time such point of view was reached by the trainmen. We do not think this count charges wantonness against the defendant's employes. Conceding, which is by no means clear, that it sufficiently avers the character of the crossing as being one where people passed in such numbers and with such frequency as that it was likely or probable persons would be on the track there and exposed to collision with passing trains, it is not averred that the trainmen were aware of this state of facts, and without such knowledge on their part willfulness or wantonness in respect of persons so exposed cannot be imputed to the defendant. Moreover, the trainmen were under no duty to stop the train or to check its speed upon seeing a person on the track two hundred yards away at the crossing. The duty which the law does impose on them is to give signals of their approach so that persons on the track at crossings will be warned and get off before the train reaches them, and the train operatives have a right to assume that they will get off until it becomes apparent that they will not. A general averment that defendant's employes wantonly or willfully ran the train against the intestate and killed her, without more, (which is the averment of the 6th count) is sufficient; but when to such general averment is added a statement of the facts and these, while they may involve negligence, do not support the charge of wantonness or willfulness, the count is inadequate as one for wantonness and the like, and is bad as one for negligence because of the inconsistency and repugnancy of its averments.—*Memphis & Charleston Railroad Co. v. Martin,* 117 Ala. 367. And surely, there being no duty on these trainmen to stop the train or to check its speed on

seeing a person on the track at the crossing two hundred yards away, and no necessity ordinarily for them to do so, it cannot be said that they were either negligent or wanton in running the train at such a rate that they could not stop it or check its speed between this point of view and the crossing. The 5th amended count was bad, we conclude, and the demurrer to it should have been sustained.

Moreover, its averments were not proved; there was no evidence tending to show that the train, at the speed it was running on this occasion, could not have been stopped before reaching the crossing, or its speed sufficiently checked to allow a person on the track at the crossing, when the train was two hundred yards away, to escape injury; and for this the affirmative charge should have been given for defendant on this count.

The affirmative charge asked by defendant on the 6th count, which does charge wantonness or intentional wrong producing intestate's death was properly refused. We are not prepared to say there was no evidence adduced in support of this count.

Reversed and remanded.