# Robinette v. Alabama Great Southern Railroad Company.

## Action for Damages for Personal Injury.

[Decided Dec. 18th, 1901.]

1. *Contributory negligence at street crossing; failure to stop; general charge.*—Where the evidence showed that plaintiff drove on defendant's track without stopping, when his view of the approaching train was obstructed, and after passing the obstacle which obscured his view he discovered the train within a few feet of him and made an effort to cross the track ahead of it, and his vehicle was immediately struck by it, and where there was evidence tending to show that he was seen by some of those in charge of the train after he had passed the obstruction, which was some six, eight or ten feet from the track, but there was no evidence tending to show that the train, which was going at a speed of 20 miles an hour, could have been stopped in time to have prevented the injury,—plaintiff was guilty of contributory negligence, authorizing the giving of the general affirmative charge for defendant.

APPEAL from Birmingham City Court.
Tried before Hon. CHAS. A. SENN.
Action by George W. Robinette for damages for personal injuries. The complaint charged simple negligence, and defendant pleaded the general issue and contributory negligence.
In addition to the facts shown by the opinion the record shows the following facts: The injury occurred in the day time in the town of Avondale, at a point where defendant's track crossed the main street of the town. Plaintiff was driving a one-horse wagon, going south. The track of the Southern Railway Company also crossed this street, that and defendant's track being fifty

or sixty feet apart, and the track of the Southern Railway Company being further from plaintiff than the other. There was a flagman or watchman at the crossing, who was near the Southern track and had been waving a red flag as a danger signal to persons traveling on the highway. Plaintiff testified that there was a train on the Southern track going east, and that defendant's train was going west and was backing. He further testified, "By the time I got up to the switch of the A. G. S., which was between me and the main line, the train on the Southern had just about cleared the street. The flagman had gotten to the place where he generally stopped, dropped his flagstick on his shoulder, and stood there with his back to me, and I looked as well as I could each way to see whether any trains were approaching, and, seeing none, I started across the A. G. S. track. I looked in each direction before I crossed and listened, too. * * * When I passed around the box car standing on the switch track, and my mule got on the A. G. S. track, I saw the train approaching from the east, backing, and it was very near to me by the time I got the mule off the track, the train was coming too near me. I jumped to save myself. * * * There is a railroad signal there for the trains to slow up at the crossing. * * * I could neither see nor hear the train after looking and listening before I went on the track. * * * I understand I have no business coming across that crossing when a red flag is being waived. The flagman's back was turned to me. I did not wait for him to give me the white flag, just went over the crossing. I heard the man on the train holler. I think that train, when it got to a point where I could see it, was about 70 or 80 feet away. * * * I could see the train coming very fast. The mule was right on the track when I first saw the train, and I raised the lines and gave her a slap, and she made a spring forward, and I jumped at the same time. * * * I don't think I came to a full stop before going on the track; think I slowed my mule up; it was a very slow walk, and it is possible I came to a full stop." The evidence was conflicting as to whether

the flagman waved the red flag at plaintiff, and as to the speed of the train, and as to whether train signals were given. One witness testified: "I saw no signals or alarm by the railroad, except I saw men on top of the train trying to signal the engineer down; I believe there were three."

At the close of the evidence for plaintiff, the court, at defendant's request, gave the general affirmative charge in its favor, and this action is assigned as error.

JOHN H. MILLER, for appellant, cited *Tanner v. L. & N. R. R. Co.*, 60 Ala. 621; *L. & N. R. R. Co. v. Brown*, 121 Ala. 221; *Central of Ga. Ry. Co. v. Lamb*, 124 Ala. 172; *Continental Imp. Co. v. Stead*, 95 U. S. 161; *Judson v. R. R. Co.*, 158 N. Y. 597; *S. & W. R. R. Co. v. Moore*, 105 Fed. Rep. 725; *T. C. I. & R. R. Co. v. Stevens*, 115 Ala. 461; *B. R. & E. Co. v. Pinckard*, 124 Ala. 372; 1 Brickell's Digest, 335, §§ 1 and 3.

SMITH & WEATHERLY, for appellee, cited *H. A. & B. R. R Co. v. Sampson*, 91 Ala. 560; s. c. 112 Ala. 425.

TYSON, J.—The evidence shows that plaintiff drove upon the defendant's track without stopping, when his view of the track in the direction from which the train was approaching was obstructed. That his vehicle was immediately struck by the moving train. According to the testimony of the plaintiff himself, the view of those in charge of the train was obstructed by the same obstacle that shut out his own. After passing the obstacle which obscured his view, he discovered the approaching train within a few feet of him and made an effort to cross the track ahead of it. There is testimony tending to show that he was seen by some of those in charge of the train after he had passed the obstruction which was some six, eight or ten feet from the track upon which his vehicle was struck. But there is no evidence tending in the remotest degree to show that the train, the speed of which was some twenty miles per hour, could have been stopped in time to have

prevented the injury. On this state of facts, which are without dispute, it must be held that the injuries complained of are directly attributable to plaintiff's own negligence.—*Central of Ga. Ry. Co. v. Forshee*, 125 Ala. 199; *M. & C. R. R. v. Martin*, 117 Ala. 368.
Affirmed.

## Action for Damages for Personal Injury.